**FILED**

**JUL 14 2021**

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

1   Brent Oster (pro-se)
    Santa Clara, CA, 95050
2   brentoster@yahoo.com
    Justine Falcon, Legal AI
3   justine.falcon@orbai.com

4               UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6   BRENT OSTER (plaintiff)

7   KATHIA OSTER / PORTUGUEZ (involuntary plaintiff)

    vs.
8
    MORENO FAMILY LAW FIRM
9     MARILYN MORENO
10    MICHAEL H. MORENO
      KARL NASTROM
11    SHELLY O'BRIEN
12  LAW FIRM OF J HECTOR MORENO
13    J HECTOR MORENO
      JOSEPH TANG
14  GOMEZ-EDWARDS LAW GROUP
15    LAUREN EDWARDS
      NATALIE GOMEZ
16  BERKSHIRE HATHAWAY INC.
17    INTERO REAL ESTATE SERVICES
      BRIAN CRANE
18    CHRISTOPHER MOLES,
19    HEATHER WANG,
      RICK TREVINO,
20    DOE INTERO EMPLOYEES 1-10
21  SANTA CLARA FAMILY JUSTICE CENTER
      JUDGE JULIE EMEDE,
22    TEMP JUDGE SHARON ROPER,
23  COUNTY OF SANTA CLARA,
      SOUTH COUNTY CRIMINAL COURT,
24      DOE 1-5, CRIMINAL COURT JUDGES,
25    SANTA CLARA COUNTY DISTRICT ATTORENY,
        MICHAEL H. MORENO (acting as DA PROSECUTOR),
26      MURAT OZGUR (acting as DA PROSECUTOR),
27      DOE 10-19, DA PROSECUTORS,
28    (defendants)

CV 21 - 5400 NC

CASE NO. _____

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACT
RACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT

42 U.S. CODE § 1983
AGENCIES ACTING UNDER COLOR OF LAW
VIOLATION OF CIVIL RIGHTS
VIOLATION OF CONSTITUTIONAL RIGHTS
2ND, 4TH, 6TH, 8TH, 14TH AMENDMENT

42 USC § 12132
DISCRIMINATION

JURY TRIAL DEMANDED

SIGNATURE BY FAX

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 1

**INTRODUCTION**

1.   Plaintiff Brent Oster, on behalf of himself and involuntary Plaintiff Kathia Oster/Portuguez, is suing the defendant persons for violations of 18 U.S. CODE § 1961 - Racketeer Influenced and Corrupt Organizations (RICO) Act under 1962(c) and (d). Both Plaintiffs - Brent Oster and Kathia Oster/Portuguez are persons who sustained injury to their property by reason of the criminal acts that the defendant persons committed (and/or conspired to commit) in a pattern of reackteering, including the predicate crimes of Extortion, Tampering/Interfering with a Witness, Retaliation against a Witness or Victim, Money Laundering, and/or colluding and conspiring with the other persons operating the Enterprise committing these crimes. In violation U.S. CODE § 1962(c)&(d), the defendant persons have managed and/or colluded with an Enterprise engaged in a pattern of racketeering activity against multiple parties (Exhibits A-A, D, E, F) in violation of State and Federal criminal laws over a substantial period of time.

2.   Plaintiff, Brent Oster (on behalf of himself and involuntary plaintiff Kathia Oster/Portuguez) is suing select Defendants persons and Agencies working for the State of California and County of Santa Clara under the jurisdiction of US District Court, 42 U.S. Code § 1983 for the wrongful actions of the agencies and persons acting under their direction, under the color of law, for deprivation of their rights, privileges, or immunities secured by the United States Constitution and laws where, at times, these individuals conspired with the persons operating the Racketeering Enterprise.

3.   Plaintiff Brent Oster is suing the defendant parties for violations of 42 USC § 12132 - Americans with Disabilities Act for discrimination against

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 2

him as a person with a recognized disability and misconstruing his disability to bring wrongful and malicious prosecution against him, as well as to discredit his lawful pleadings and statements, denying him equal protection of the laws, and denying him Municipal, County, and State services for the victim of a crime, including not prosecuting his reports of misconduct, and dismissed them just because he has a protected disability and is Bipolar.

4.   From 2017 to present, Plaintiffs have been victims of crimes conducted in a racketeering pattern by the defendant persons, with Plaintiffs injured in their property by this conduct constituting the violations. The plaintiff's injuries flow from the commission of the predicate acts, as they were defrauded of property by Extortion while in a divorce proceeding (Case# 17FL003843) by the Moreno Attorneys (Exhibit A) (and the other defendants - Exhibit B, C), who in the racketeering pattern willfully and knowingly committed crimes of Fraud, Extortion, Tampering/Interfering with a Witness, Retaliation against a Witness or Victim, Money Laundering, and/or colluding and conspiring with the other persons operating the Enterprise to so defraud by Extortion Plaintiffs of a $1.3M house and other property. The Moreno Attorneys have shown a pattern of such racketeering activity for decades (Exhibit A-A, Exhibit D, E, F), acting alongside the other defendant agencies and persons, who by their actions or omissions aided and abetted in these criminal acts, constituting violations of 18 U.S. Code § 1962 (d).

5.   Individual defendants working at State and County agencies (acting under the color of law) also deprived plaintiff of his rights, privileges and immunities secured by the Constitution and Laws of the United States of America in violation of 42 U.S. Code §1983 and, and by their willful actions

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 3

or omissions, conspired with the operators of the racketeering Enterprise by so doing, committing violations of 18 U.S. Code § 1962 (d) by said State and County employees.

6.   The defendants wrongful and malicious actions caused $10M in actual damages to plaintiff and his (now ex) wife, Kathia Oster/Portuguez, including loss (and loss of use) of $2M+ in assets, loss of present and future income (and earning capacity), exacerbation of existing medical conditions, and ongoing emotional pain and suffering, among other damages. The damages specifically resulted from the defendant persons wrongfully forcing the sale of a $1.3M Gilroy home with orders obtained by Extortion, purchased solely by Brent Oster in 2015, which Plaintiff (Kathia Oster) legally had no stake in at the time of divorce.

7.   The defendant parties unlawfully took the home from Plaintiffs' and sold it, then laundered the proceeds through an intermediary to have the funds disbursed according to the decisions of the operators and managers of the Enterprise, with none given to the owner Plaintiff (Brent Oster), and less than $50,000 given to Plaintiff (Kathia Oster). The operators of the racketeering Enterprise fraudulently justified this disbursement to themselves by justifying it as 'their professional fees' that were only incurred because of their criminal acts, and not from acting in any professional capacity. As well, the Plaintiffs lost $360,000 in retirement funds (at 2017 valuation, $2.4M in 2021 valuation), they lost their jobs, and had no income or ability to work – due to the disruption of their lives and expenses caused by the criminal acts done in a pattern of racketeering from 2017-2020.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 4

8.   By 18 U.S. Code § 1962(c) all of the named defendant parties who were persons willfully involved in the operation and/or management of the racketeering Enterprise and/or willfully committed predicate crimes are liable to the plaintiffs.

9.   By 18 U.S. Code § 1962(d) all of the named defendant parties who were persons that willfully and knowingly conspired with the operators and management of the racketeering Enterprise are liable to the plaintiffs.

10.   Additionally, by 42 U.S. Code §1983 the named parties acting on behalf of the State of California, the County of Santa Clara, and municipalities, acting under the color of law, are liable to the plaintiffs for their violations of Constitutional Rights and by 18 U.S. Code § 1962(d) for their actions and omissions in conspiracy with the persons operating the Enterprise, done to aid and abet them in their criminal acts.

11.   The agencies acting under the color of law also had a failure to intervene against the criminal activities of the defendant individuals and parties. By so doing they willfully allowed harm to come to plaintiffs. Specific parties are noted in the complaint that violated 42 USC § 12132, with their discrimination causing and exacerbating the damages in the complaint.

12.   The goal of the activities of the persons involved in this racketeering Enterprise was solely to defraud both plaintiffs of as much money and property as possible, for the mutual benefit of the persons operating the Enterprise, and launder and distribute those funds amongst themselves using legal and or illegal intermediaries. None of the parties involved, including

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 5

Intero have been willing to send any documents to plaintiff regarding the transactions and disbursement of funds from the sale of the home he purchased with his sole property funds in 2015.

### JURISTICTION

13.   This action arises under 18 U.S. CODE § 1961 (RICO), 42 U.S. CODE § 1983 (Violation of Civil and Constitutional Rights), and 42 USC § 12132 (Discrimination). A substantial part of the events that are the reason for this complaint – including the acts and omissions of most of the defendants, occurred in the State of California, Santa Clara County, and in the City of San Jose, or City of Gilroy. US District Court, Norther California has Jurisdiction.

### PARTIES

14.   Plaintiff herein, Plaintiff Brent Oster, "Plaintiff (Brent Oster)" is a citizen of the United States, living in Santa Clara County, CA. Plaintiff (Brent Oster) Oster is a qualified individual with a recognized disability pursuant to 42 United States Code, Section 12132.

15.   Involuntary Plaintiff herein, KATHIA OSTER (PORTUGUEZ) or ("KATHIA"), is a citizen of the United States, living in Santa Clara County, KATHIA is a qualified individual with a recognized disability pursuant to 42 United States Code, Section 12132. She is listed as an involuntary plaintiff in this action because she was also a victim of the wrongful actions of the defendants, and because complete relief of the damages to either of the plaintiffs cannot be obtained without her inclusion. She has been released from all civil liability in these matters by Plaintiff (Brent Oster) vacating a Santa Clara County civil complaint against her with prejudice and

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 6

releasing all claims against her and only her, and from any criminal acts by statute of limitations.

16.   Defendant County of Santa Clara ("COUNTY") is a municipal corporation, duly organized and existing under the laws of the State of California. Under its authority, the County operates the Santa Clara District Attorney's Office and Santa Clara County Office of the Sherriff, and co-administers the Santa Clara Superior Courts, Santa Clara Family Courts, and Santa Clara Criminal Courts co-administered with the State. All these are named as defendant parties under 42 USC 1983.

17.   Defendant Santa Clara Family Justice Center employs (or employed) Beth McGowan, Judge Julie Emede, Judge Thomas Kuhnle, and Temp Judge Sharon Roper, all of which participated in plaintiff's divorce case (17FL003843). Only Judge Julie Emede and Temp Judge Sharon Roper are explicitly named as defendants, for acting outside of their official capacities. They were sued in (5:20-CV-07828-NC) for constitutional rights violations, but NOT for RICO violations. Plaintiff would like to joinder that action (5:20-CV-07828-NC) into this one, dropping claims against all state agencies and employees except these two - Judge Julie Emede and Temp Judge Sharon Roper, and citing the State agencies for failure to intervene.

18.   Defendant Judge Julie Emede is a judge in the Santa Clara Family Court, who conspired with the other members of the Enterprise.

19.   Temp Real-Estate Judge Sharon Roper is named as a defendant person operating the Enterprise, was also person conspiring with the persons operating the Enterprise acted outside her professional authority to do so.

20.   Defendant District Attorney Office of Santa Clara participated in the malicious prosecution of Plaintiff and were sued in (3:20-CV-01125-JD). Plaintiff would like to joinder that case, as well as (5:20-CV-07828-NC) into this one, as the defendant individuals, events, and claims listed in those complaint are a sub-set of this action, and their inclusion is necessary in this action because of the central role of the Santa Clara DA Office in these events.

21.   At times mentioned herein, Defendant Murat Ozgur and Michael Moreno were employed by defendant COUNTY as a District Attorney Prosecutors for the COUNTY. They are being sued in their official capacity as District Attorney Prosecutors for the COUNTY for Constitutional Right violations under 42 U.S. CODE § 1983, as well as Michael Moreno being sued for criminal actions outside his official capacity under 18 U.S. CODE § 1962 (c) and (d).

22.   Additional Parties DOES 10-19, employed by defendant COUNTY as employees of DA OFFICE for COUNTY, not yet identified, acted against plaintiff. Plaintiff, 3 years after he was charged, still has not been informed of the nature and cause of the accusation; nor to be confronted with the witnesses against him and does not know exactly who at the DA office was actually involved in his case and prosecution. His requests for such information have been unanswered, especially regarding Michael Moreno's participation in prosecuting Plaintiff.

23.   The Law Firm of Marilyn Moreno, consisting of Marilyn Moreno (manager), Shelley O'Brien, and Karl Nastrom - were all culpable persons managing the

Enterprise, and committing predicate crimes. Marilyn is the Donya, the leader of the Enterprise.

24.   The Law Firm of J Hector Moreno, consisting of J Hector Moreno and Joseph Tang, were all culpable persons managing the Enterprise, and committing predicate crimes.

25.   Michael Moreno, a Santa Clara DA prosecutor in the Family Violence Unit, and son/nephew of Hector and Marilyn Moreno, was a culpable person operating and conspiring with the Enterprise and committing predicate crimes outside of his official capacity.

26.   Gomez Edwards Law Group, comprised of partners Lauren Edwards and Natalie Gomez and their respective law firm, Gomez-Edwards were all culpable persons operating the Enterprise, and committing predicate crimes. They were subcontracted by Marilyn Moreno and conspired and colluded with her to commit predicate crimes.

27.   These attorney parties in 19-21 will all be referred to collectively as "Moreno Attorneys", and also referred to as individual law firms and as individuals where required.

28.   Rick Trevino, and Intero Real Estate Services (wholly owned by Berkshire Hathaway), and his corporate governance (Christopher Moles, Brian Crane) and corporate counsel (Heather Wang) are all culpable persons engaged in and operating the Enterprise and all participated directly in predicate crimes as well as conspiring to commit crimes with the other operators.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 9

**STATEMENT OF FACTS**

29.   From 2017 to present, the defendants and persons operating the Enterprise committed crimes of Fraud (deceit, concealment, perjury, false reports of crimes, breach of contract/stipulation), Tampering or Interfering with a Witness (18 U.S. CODE § 1512), Retaliation against a Witness or Victim (18 U.S. CODE § 1513), Extortion (18 U.S. CODE § 1951), Money Laundering (18 U.S. CODE § 1956, 1957), Racketeering Activity (18 U.S.C. § 1962(c)), and/or Colluding and Conspiring (18 U.S.C. § 1962(d)) with the other persons operating that racketeering Enterprise and conspiring with external parties and together colluding to defraud plaintiffs of over $2M of property and assets by these crimes, for the financial gain of those operating the Enterprise.

30.   In the Exhibits A-A, D, E, F, plaintiff shows this was not an isolated incident, and that the defendant parties have been participating in this racketeering Enterprise with income derived from a pattern of racketeering activity in violation of state and federal criminal laws over a span of more than 10 years, against multiple parties other than Plaintiffs (Exhibit A-A, Exhibit D, Exhibit E, Exhibit F).

31.   Plaintiff was, by the combined actions and omissions of the State and County defendants, from 2017 to present, also denied equal protection of the laws and deprived of liberty and property without due process of law (Fourteenth Amendment), subject to unlawful search and seizure of property without due process (Fourth Amendment), subjected to malicious prosecution and denied the right to a speedy and fair trial, denied the right to face

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 10

the accusations against him and to face his accusers (Sixth Amendment), subjected to excessive bail and cruel and unusual punishment (Eight Amendment), deprived of his right to bear arms (Second Amendment), deprived of his freedom of speech (First Amendment), and had court judgments made against him in violation of these Constitutional rights and the Supremacy Clause with deliberate indifference by the State and County defendants, who at many times had a reasonable opportunity to intervene to prevent these violations and the crimes by the other defendants and simply refused to do so.

32.   This happened during and surrounding what was being called a divorce proceeding (Case #17FL003843) litigated by malicious opposing counsel. It was not a divorce, it was an official proceeding in which the Plaintiffs were targeted by persons operating a criminal enterprise specializing in a long-practiced pattern of racketeering activity against persons in divorce proceedings (Exhibits A-A, D, E, F). Against Plaintiffs, the Moreno Attorneys committed crimes of Fraud (deceit, concealment, perjury, false reports of crimes, breach of contract/stipulation), Tampering or Interfering with a Witness (18 U.S. CODE § 1512), Retaliation against a Witness or Victim (18 U.S. CODE § 1513), Extortion (18 U.S. CODE § 1951), Money Laundering (18 U.S. CODE § 1956, 1957), Racketeering Activity (18 U.S.C. § 1962(c)), and/or Colluding and Conspiring (18 U.S.C. § 1962(d)) with the other persons operating that racketeering Enterprisefrom 2017 to present.

33.   As a result of the acts of criminal racketeering operation against both the Petitioner and Respondent (who are the Plaintiffs in this action) during the 'divorce', they both lost all of the community property and Plaintiff (Brent Oster's) sole property assets to the Moreno Attorneys and the other

co-operators of the Enterprise - by Fraud and Extortion. In Exhibit A-A, Exhibit D, Exhibit E and Exhibit F it is evidenced that this is a pattern that the defendant persons operating the racketeering Enterprise have followed for at least a decade, committing these crimes against hundreds of individuals.

34.   In Exhibit K is a spreadsheet calculation of what a lawful division of assets would be in the Oster's divorce, done by Expert Family/Financial Attorney Dana Kruger in Dec 2017, shortly after separation. Below is the summary. Plaintiff (Kathia Oster) should have taken possession of a San Jose Home, and a portion of the retirement savings. Plaintiff (Brent Oster) should have taken possession of the Gilroy Home (which is evidenced as his sole property in Exhibit H), and a portion of the retirement savings, and paid Kathia 3 years of support.

| # | Property Items | Joint | | | Before Tax | | | After Tax | |
|---|---|---|---|---|---|---|---|---|---|
| | | FMV | Debt | Equity | Husband (P) | Wife (R) | Tax Basis | Husband (P) | Wife (R) |
| | REALESTATE | 2,315,000 | 936,000 | 1,379,000 | 160,000 | 426,000 | 0 | 160,000 | 426,000 |
| 1 | 3823 Arbuckle Drive, San Jose, CA 95124 (FMV reduced by Kathia's SP $573,000 Claim) | 542,000 | 116,000 | 426,000 | 0 | 426,000 | 0 | 0 | 426,000 |
| 2 | 1940 Saffron Court, Gilroy, CA 95020 (FMV reduced by $220,000 for Brent's 2640 Claim) | 980,000 | 820,000 | 160,000 | 160,000 | 0 | 0 | 160,000 | 0 |
| 25 | Brent's SP $220,000 FC 2640 Claim in 1940 Saffron Court, Gilroy CA [SEPARATE] | 220,000 | 0 | 220,000 | 0 | 0 | 0 | 0 | 0 |
| 26 | Kathia's SP $573,000 FC 2640 Claim in 382 Arbuckle Drive [SEPARATE] | 573,000 | 0 | 573,000 | 0 | 0 | 0 | 0 | 0 |
| | **Totals:** | 1,613,989 | 936,000 | 677,989 | 241,806 | 436,183 | | 241,806 | 436,183 |
| | **Equalizing Payments:** | | | | 97,188 to Husband | | | 97,188 to Husband | |

35.   By this lawful calculation, **Brent owed Kathia NOTHING, no offset, no buyout at separation.** Kathia owed Brent an offset payment of $97,188, in lieu of which Brent was willing to reduce the amount of retirement or support he gave her to balance this offset so she did not have to pay him anything. It was a simple divorce.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 12

36.    Instead of this lawful division, the only proceeds that the Plaintiffs (Brent Oster and Kathia Oster) both received from the divorce and home sale process by the end of the proceeding in 2020 was a fraction the above, because of the property losses they sustained due to the criminal racketeering pattern of Extortion and other crimes by the Moreno Attorneys and other operators of the Enterprise, with Plaintiff (Brent Oster) 'owing' a $500,000 offset to Plaintiff (Kathia Oster). How did the offset get skewed by $596,000, and how did all that money disappear? This a racketeering pattern the Moreno Attorneys and their conspirators have followed for over a decade, diagrammed here for plaintiffs' case and in Exhibit C and Exhibit F for multiple other cases that they have followed the same racketeering pattern in.

| Flowchart | | | Proceeds of Forced Sale of Gilroy House in Divorce | |
|---|---|---|---|---|
| H Moreno EWH | → Fraudulent Temp DVRO → | Family Court Sept 2017 | | |
| M Moreno EWH | → PC 273.6 Charge False PC 243 Charge → | DA Office Sept 2018 | Sale Price (currrent market) | $1,300,000 |
| M Moreno EWH | → Fraudulent Permanent DVRO → | Family Court Sept 2018 | | |
| M Moreno EWH | → Refusal to Set Aside Permanent DVRO → | Family Court Dec 2018 | Wells Fargo Mortgage Principle | $798,053 |
| | | | Wells Fargo Mortgage Arrears | $96,893 |
| M Moreno EWH | → PC 273.6 Charge → | DA Office Oct 2018 | | |
| M Moreno EWH | → Forced Sale Order (Extortion) → | Courly Court Nov 2018 | Realtor Fees | $78,000 |
| | | | Fee to ready for Sale, staging | $20,000 |
| M Moreno EWH | → Settlement (Extortion) → | Family Court Jan 2019 | Reinstate and pay for Utilities | $10,000 |
| | | | Association Dues Arrears | $2,640 |
| M Moreno EWH | → PC 273.6 Charge → | DA Office Feb 2019 | | |
| | | | Legal Fees Moreno | $125,000 |
| Gomez Edwards EWH Rick Trevino | → Refusal to Set Aside Forced Sale of House → | Family Court May 2020 | Legal Fees Gomez Edwards | $85,000 |
| | | | Legal Fees Hoover Krepelka | $50,000 |
| Gomez Edwards EWH Rick Trevino | → Fraudulent move-out order → | Family Court June 2020 | Net from Sale | $34,414 |
| | | | Nothing Left for Owners! | |
| Gomez Edwards EWH Rick Trevino | → Fraudulent Sale Loss of $1.3M House → | Aug 2020 | | |

Lawsuits:  19CV356322 vs Hector, Marilyn Moreno Law Firms
20CV361372 vs Gomez Edwards Law Group
20-CV-01125-JD  vs Santa Clara County, DA
19CV361036 vs Intero Realty, Rick Trevino

37.   Compared to a lawful distribution of assets(Exhibit K-1, K-2), where each Plaintiff should have received a separate home worth about $1.3M, and $150,000 in retirement funds (at 2017 valuation - that TSLA stock would have been worth $2.4M in 2021), instead only Plaintiff Kathia Oster receiving some funds (amount unknown as of this filing) from the sale of the Gilroy home, estimated to be less than $50,000, which are insufficient to last her for even 6 months of expenses post-divorce. As of this filing she is probably without income and without any savings or money to live on, and living in hardship.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 14

38.   The defendant parties, including Intero and Gomez Edwards refuse to disclose any documents to Plaintiff (Brent Oster) regarding the sale of the house, the transaction from the buyer, any intermediate instruments / accounts / agencies used to hold the funds, and documents showing the decision and process by which the funds were finally disbursed and to whom. Their actions and withholding of this information from the rightful owner and seller of the house constitutes Fraud and Money Laundering (18 U.S. CODE § 1956, 1957).

39.   This pattern of Racketeering - Fraud by filing a DVRO with perjured testimony, then 8 to 11 months later, committing further Fraud - filing false reports of crimes - to get criminal charges against their opponent right before a settlement hearing in order to place the opponent in fear (Exhibit H, Exhibit F) to then dissuade, interfere, harass, and tamper with them as a witness, and to Extort (Exhibit A, Exhibit D, Exhibit E, Exhibit F) property from them, liquidate it and Laundering the proceeds before distributing monies to the operators of the Enterprise - is a typical pattern for the racketeering activity that Hector and Marilyn Moreno (and the other co-operators of the Enterprise) follow in defrauding their opponents in family court.

40.   The only explanation of how these Moreno attorneys were able to do this to Plaintiffs (Brent Oster) (Respondent in Divorce) and KATHIA (Petitioner in Divorce), and to hundreds of other couples over the past decades - and not get caught - is that they are involved in a racketeering Enterprise with the other defendants which is well embedded in state, county, and

municipality agencies that consistently, as a policy have a failure to
intervene to stop them, and actually aid and abet them in these acts.

41.   This Racketeering Enterprise was an association-in-fact that exhibited
the three required characteristics: (1) they had a common or shared purpose
among its members (2) had some continuity of structure and personnel and (3)
an ascertainable structure distinct from that inherent in the pattern of
racketeering. This is detailed below.

42.   The Law Firm of J Hector Moreno, consisting of J Hector Moreno, and
Joseph Tang, were all culpable persons managing the Enterprise, and
willfully and knowingly committed crimes of Fraud, Tampering or Interfering
with a Witness (18 U.S. CODE § 1512), Retaliation against a Witness or
Victim (18 U.S. CODE § 1513), Extortion (18 U.S. CODE § 1951), Money
Laundering (18 U.S. CODE § 1956, 1957), Racketeering Activity (18 U.S.C. §
1962(c)), and/or Colluding and Conspiring (18 U.S.C. § 1962(d)) with the
other persons operating the Enterprise to commit these crimes, with the
purpose being to deprive Plaintiffs of property, for the benefit of the
operators of the Racketeering Enterprise.

43.   Hector Moreno had his client made a false report to Gilroy police and
sent them to visit and dissuade plaintiff (Brent Oster) on 13 Sept 2017 by
the police entering his home without a warrant (nor invitation, in violation
of Plaintiff's 4th Amendment Rights). They entered yelling at Plaintiff
(Brent Oster) to sit on his stairs while they held their hands on holstered
weapons, ready to draw. They entered unlawfully and used excessive force
because Hector Moreno had instructed his client to file a false police

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 16

report to them that plaintiff (Brent Oster) was suicidal, bipolar, aggressive, and armed.

44.  This act was a crime of Tampering with a Victim or Witness to prevent Plaintiff from making a truthful police report that his wife, Kathia Oster had battered him 2 Sept 2017, 11 days prior and ran away from home. Because Hector and his attorney advised their client(s) to make false reports to police, they were in violation of the Attorney Rules of Professional Conduct 3, Rule 3.1(a)(1), and Rule 3.4(c), and acting outside their lawful duties as attorneys.

45.  Hector Moreno then filed a falsified DVRO petition (Exhibit A-G) in the Family Court vs plaintiff (Brent Oster) with similar false and discriminatory claims on 14 Sept 2017 to evict him from his home, put him in fear (for purposes of Extortion) and dissuade him from testifying about Kathia Oster's assault on him on 2 Sept 2017 from fear and from physically being dislocated from his only home and the country.

46.  The Moreno Family Law Firm is led by Marilyn Moreno, the manager of the Enterprise, coordinating the efforts of the rest of the persons in the Enterprise. Her and her employees, Karl Nastrom, Shelley O'Brien, and others were all culpable persons managing the Enterprise, who willfully and knowingly committed crimes of Fraud, Tampering or Interfering with a Witness (18 U.S. CODE § 1512), Retaliation against a Witness or Victim (18 U.S. CODE § 1513), Extortion (18 U.S. CODE §  1951), Money Laundering (18 U.S. CODE § 1956, 1957), Racketeering Activity (18 U.S.C. § 1962(c)), and/or Colluding and Conspiring (18 U.S.C. § 1962(d)) with the other persons operating the

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 17

Enterprise to commit crimes aimed at deprive Plaintiffs of property, for the benefit of the operators of the Racketeering Enterprise.

47.   Marilyn Moreno became counsel for plaintiff (Kathia Oster/Portuguez) in March 2018, and immediately coached and assisted Kathia with writing a large, falsified report of crimes that contradicted all previous police reports by plaintiff (Kathia), and reports and evidence by plaintiff (Brent Oster). Kathia's report was submitted to Gilroy PD in April 2018 to tamper with and influence plaintiff as a witness and put him in fear for purposes of later Extortion (18 U.S.C. § 1951).

48.   In a May hearing, Marilyn Extorted ownership of the jointly owned San Jose property from Brent under fear by verbally threatening to make Kathia's DVRO against him permanent, and later defrauded plaintiff of the 100% ownership (promised to him in that hearing) in the Gilroy house, a crime of Extortion (18 U.S.C. § 1951).

49.   When confronted, and reported to State Bar and Police (Exhibit B-A), Marilyn Moreno conspired and colluded with Michael Moreno and their connections at the DA office to bring false charges against plaintiff (Brent) in Sept 2018 for purposes of Retaliation against a witness, and Tampering with a Victim or Witness to prevent him from attending hearings (under fear of arrest), while Plaintiff (Kathia Oster's) attorney, Shelley O'Brien committed perjury in a 17 Sept 2018 hearing (Exhibit A-I) to get the DVRO against plaintiff made permanent – Tampering with a Victim or Witness, and Retaliation against a witness.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 18

50.   These actions interfered with plaintiff reporting these crimes as part of a Racketeering pattern (18 U.S. Code § 1961) to the FBI, and reporting that pattern was a precursor to a predicate crime of Extortion (18 U.S. Code § 1951), so this Tampering and Interference with a witness was a Federal Predicate Crime of (18 U.S. CODE § 1512) and a Federal Predicate Crime of (18 U.S. CODE § 1513). Plaintiff (Brent Oster) was only able to get a quick, mailed report of these crimes and the pattern they were following to Gilroy PD (Exhibit B-A), who did nothing, not knowing how to prosecute a criminal pattern of racketeering. Because of this interference, tampering, harassment, and retaliation, it would be 2020 before Plaintiff could file Federal Civil Complaints regarding these crimes and reports to the FBI based on them.

51.   Marilyn and her attorney Karl Nastrom drove plaintiff out of the country by fear (Exhibit H) - by filing false reports of crimes in April 2018 through Feb 2019 (Exhibit A-L), resulting in charges against Plaintiff in Sept, Oct 2018, and Feb 2019. By being out of country, Plaintiff (Brent Oster) avoided arrest and foiled their plan to have him arrested multiple times and detained by authorities, but Plaintiff missed asset settlement hearings in the divorce due to their tampering with a victim or witness, and Retaliation against a witness. Through Extortion (18 U.S.C. § 1951) by fear Marilyn Moreno and Karl Nastrom obtained orders against plaintiff in Nov 2018 to sell his Gilroy home and Through Extortion (18 U.S.C. § 1951) by fear obtained a settlement stipulation on 9 Jan 2019 to give all the proceeds of that sale to their client (Exhibit K-3), Plaintiff (Kathia Oster).

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 19

52.   Michael Moreno, a Santa Clara DA prosecutor in the Family Violence Unit, and son/nephew of Hector and Marilyn Moreno, was a culpable person managing the Enterprise, who criminally conspired (18 U.S. CODE § 1961(d)) with the Moreno Attorneys to willfully and knowingly commit crimes of tampering with a victim or witness , and retaliation against a witness by conspiring with them to bring false charges against Plaintiff (Brent Oster) Sept 2018, Oct 2018, and Feb 2019 to place him under duress and fear to aid the Moreno Attorneys to Extort (18 U.S.C. § 1951) assets and real-estate property from him during the asset hearings in the divorce in Nov 2018 and 9 Jan 2019.

53.   Judge Julie Emede, is a judge in the Santa Clara Family Court, who violated Plaintiff's 6th and 14th Amendment rights, knowingly and wilfully conspired in the criminal acts of perjury and dissuasion by Shelley O'Brien and the Moreno Family Law Firm when Judge Emede granted a permanent DVRO against Brent Oster 17 Sept 2018 based on obviously perjured testimony submitted by Shelley O Brien, (employed by the Moreno Family Law Firm). By doing so, she was knowingly conspiring (18 U.S. CODE § 1961(d)) with other members of the Enterprise to commit crimes of tampering with a victim or witness, retaliation against a witness, and Extortion (18 U.S.C. § 1951) by other members of the Enterprise.

54.   Gomez-Edwards, is comprised of partners Lauren Edwards and Natalie Gomez took on Plaintiff (Kathia Oster) as a client in April 2019, and in violation of 18 U.S. CODE § 1962(d) willfully and knowingly conspired with Marilyn Moreno and other operators of the Enterprise to litigate the orders, stipulations, and other litigation the Moreno Family Law Firm had obtained by Fraud, Tampering & Interfering with, and Harassing a witness, and

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 20

Extortion(18 U.S.C. § 1951), even after Gomez and Edwards had been notified in writing of the full extent of the crimes of Hector and Marilyn Moreno, including being given a copy of the State lawsuit against them, describing their crimes(19CV356322 Brent Oster vs Moreno Family Law Firm et al.).

55.  Gomez Edwards Law Group, Lauren Edwards and Natalie Gomez were also all culpable persons operating the Enterprise. They were subcontracted by Marilyn Moreno, and they committed willfully and knowingly predicate crimes of Fraud (deceit, concealment, perjury, false reports of crimes), Extortion(18 U.S.C. § 1951), in State official proceedings as well as a Federal Official Proceeding (Lawsuit 3:20-CV-01125-JD Brent Oster vs Santa Clara County et al) - Tampering with a Victim or Witness (18 U.S.C. § 1512), Retaliation against a witness (18 U.S.C. § 1513), and Money Laundering (18 U.S. CODE § 1956, 1957) while operating the racketeering Enterprise.

56.  Sharon Roper is a Temp Real-Estate Judge that was arbitrating in the divorce settlement. Temp Judge Roper willfully and knowingly conspired with the other persons operating the Enterprise as per 18 U.S. Code § 1962(d) participating in crimes of Extortion(18 U.S.C. § 1951), Tampering with a victim or witness (18 U.S.C. § 1512), Retaliation against a witness (18 U.S.C. § 1513), and Money Laundering(18 U.S. CODE § 1956, 1957). She filed orders outside of her authority, in violation of plaintiff (Brent Oster's) 14th Amendment rights, and in violation of the Family Court process (Obstruction of Justice) - to try and force the sale of Plaintiff's home and evict him from it – while all parties were waiting on hearings for set-aside and reconsider motions in Family Court on the forced sale order.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 21

57.   Rick Trevino, and Intero Real Estate Services (wholly owned by Berkshire Hathaway), and his corporate governance and Counsel are all culpable persons willfully and knowingly engaged in and operating the Enterprise, with Rick Trevino acting on behalf of his Intero corporate governance with their full knowledge and consent. Rick Trevino willfully and knowingly committed predicate crimes of Fraud (deceit, concealment, perjury, false reports of crimes, violations of orders and/or contracts), Tampering or Interfering with a Witness (18 U.S. CODE § 1512) in a Federal Official proceeding (3:20-CV-01125-JD, filed Jan 2020, joinder into 5:20-cv-07828-NC filed Dec 2020), Retaliation against a Witness or Victim (18 U.S. CODE § 1513) in a Federal Official proceeding, Extortion (18 U.S. CODE § 1951), Money Laundering (18 U.S. CODE § 1956, 1957), Racketeering Activity (18 U.S.C. § 1962(c)), and Colluding and Conspiring (18 U.S.C. § 1962(d)) with the other persons operating the Enterprise, for the profit of themselves and the other operators of the Enterprise at the expense of Plaintiffs' loss of property.

58.   By repeatedly Interfering with Plaintiff from litigating or testifying in the official divorce proceeding, in State civil lawsuit official proceedings, as well as in a Federal Official Proceeding (3:20-CV-01125-JD, filed Jan 2020, joinder into 5:20-cv-07828-NC filed Dec 2020), Rick Trevino, and Intero willfully and knowingly committed predicate crimes of Tampering with a Victim or Witness (18 U.S.C. § 1512), and Retaliation against a witness (18 U.S.C. § 1513).

59.   By removing all of Plaintiff's belongings and documents from his home, not giving him time to pack or access them before he was evicted from his home by the actions of the racketeering enterprise, and putting his

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 42 U.S. CODE § 1983 - 22

belongings into a storage unit without Plaintiff's permission, forging his signature onto a contract that he could not afford to pay for, and those belongings going up for auction 7 July 2021 - Intero and Rick Trevino also violated 18 U.S. CODE § 1512 (c)Whoever corruptly - (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding (these included multiple boxes and a storage cabinet full of documents and evidence, and several HDDs that plaintiff lost).

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 23

**STATEMENT OF FACTS – PART 1**

**HECTOR AND MARILYN MORENO**

60.   Hector and Marilyn Moreno (and their law firms and employees) do not practice family law. Instead they follow a Racketeering Pattern of Fraud (deceit, concealment, perjury, false reports of crimes, breaches of contracts / stipulations), Tampering or Interfering with a Witness (18 U.S. CODE § 1512), Retaliation against a Witness or Victim (18 U.S. CODE § 1513), Extortion (18 U.S. CODE §  1951), Money Laundering (18 U.S. CODE § 1956, 1957), Racketeering Activity (18 U.S.C. § 1962(c)), and/or Colluding and Conspiring (18 U.S.C. § 1962(d)) with the other persons operating the Enterprise. By doing so, they defraud both their opponent and their client of assets during unlawful conduct in official State divorce proceedings by their pattern of racketeering.

61.   The Moreno attorneys initiated their pattern of racketeering against Plaintiffs in June 2017, with Hector Moreno instructing Plaintiff (Kathia Oster), their client, to instigate verbal arguments, physical conflicts, and even domestic violence in the home starting months before separation (Sept 2017) and to file false reports of crimes (knowing they were false) of domestic violence in the home.

62.   These plans backfired, and their instructions just made their client, Plaintiff (Kathia Oster) increasingly agitated, confrontational, and physical, to the point that on 2 Sept 2017, she chased Plaintiff (Brent Oster) upstairs and battered him, tearing his clothes and inflicting significant bruises on his arm and shoulder because he had refused to sign

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 24

documents that Hector Moreno had arranged, modifying ownership of their homes.

63.   To interfere with plaintiff reporting that assault on him before Hector Moreno could file for a divorce, Hector coached his client, Plaintiff (Kathia Oster) to make a false report to Gilroy police 13 Sept 2017 and sent them to visit and intimidate plaintiff (Brent Oster) by entering his home without a warrant (nor invitation) in violation of his 4th Amendment rights and yelling at him to sit on his stairs while they held their hands on holstered weapons, ready to draw. They used excessive force because Hector Moreno had conspired to create false reports to police that plaintiff (Brent Oster) was suicidal, bipolar, aggressive, and armed. This was a crime of Tampering or Interfering with a Witness (18 U.S. CODE § 1512), to interfere with Plaintiff from making a truthful police report that his wife, Kathia Oster had battered him 2 Sept 2017, and from making a report to FBI that was the beginning of a pattern of Racketeering By Hector Moreno, as Plaintiff had seen it in Kathia's first divorce when he started dating her.


**STATEMENT OF FACTS – PART 1b**

**HECTOR AND MARILYN MORENO**

**PATTERN OF RACKETEERING**

64.   Plaintiff (Brent Oster) will demonstrate that the Law Firms of Hector and Marilyn Moreno regularly engage in a pattern of Racketeering Activity (18 U.S.C. § 1962(c)), employing Fraud (deceit, concealment, perjury, false reports of crimes, breach of contract/stipulation), Tampering or Interfering with a Witness (18 U.S. CODE § 1512), Retaliation against a Witness or

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 25

Victim (18 U.S. CODE § 1513), Extortion (18 U.S. CODE § 1951), Money Laundering (18 U.S. CODE § 1956, 1957), and/or Colluding and Conspiring (18 U.S.C. § 1962(d)) with the other persons operating the Enterprise – in his case and in many of their other cases in the last 3 years, in a clear pattern of managing and operating a racketeering Enterprise (Exhibit A-A, Exhibit D, Exhibit E, Exhibit F). They have a known reputation amongst their peers and opponents of so acting and are reviled for it.

65.   They begin their racketeering pattern (in almost half their divorce cases) by having their client instigate conflict in the home and coaching their client to antagonize their spouse and 'push their buttons' as evidenced in the statements by Brent Oster (Exhibit A-F), Thomas Sorri (Exhibit D), and Jenifer Ninan (Exhibit E), so that the Moreno Attorneys can obtain a Domestic Violence Restraining Order (DVRO) against the spouse on behalf of their client. In a statistical analysis of the divorce cases litigated by the Moreno Attorneys done from 2016-2019 (Exhibit A-A), at separation in over 40% of their cases, they file a DVRO against their opponents (with perjured statements).

66.   Hector and Marilyn Moreno's false reports to the police, and perjured statements made in court filings and hearings resulted in a permanent DVRO (without trial) against Plaintiff (Brent Oster), and the false reports of a crimes resulted in 4 fraudulent criminal charges that have severely impacted Plaintiff (Brent Oster)'s life, destroyed his career, stopped his fiancée's immigration visa, and caused 3 years of stress, pain, and suffering for Plaintiff (Brent Oster) since the divorce proceedings began, with a total loss of 4 years wages and $360,000 in retirement funds.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 26

67.   The Moreno Attorneys crimes of Fraud (Perjury, false reports of crimes), tampering with a victim or witness were all done intentionally to place Plaintiff (Brent Oster) under duress and in fear so that they could threaten him and Extort (18 U.S.C. § 1951) property from him. They also did these crimes of false reporting of crimes and perjury throughout the proceeding to retaliate against him as witness to prevent him reporting them and their client's illegal activities to State and Federal authorities. Then they would charge enormous legal fees to Plaintiff (Kathia Oster) and/or Plaintiff (Brent Oster) because of the extraneous litigation incurred due to their criminal acts in the proceedings, defrauding Plaintiffs of the rest of the funds at the end by that means.

68.   In Exhibit E is testimony by Jenifer Nijan, who testifies that Marilyn Moreno coached her to deliberately antagonize her husband and 'push his buttons' so he would react and give Marilyn Moreno "Something to work with".. i.e. to falsify DV allegations against Jenifer's Husband, Ajit. This act of advising her client to falsify reports to police and the courts is in violation of the Attorney Code of Conduct Chapter 3, Rules 3.1, 3.3, and 3.4, criminal acts of Perjury under California Penal Code Section 118, and false reports of crimes under Penal Code 148.5, and so in these acts, Marilyn Moreno was acting unlawfully outside of her attorney litigation privilege, and her actions are NOT exempted from RICO.

69.   Marilyn Moreno used intimidation, threats, and corruptly persuaded Jenifer Ninan to engage in misleading conduct toward the Santa Clara Family Court and Police by falsifying statements in a DVTRO petition and making false reports of crimes in police reports, with intent to have Ajit Ninan evicted from his home, and by doing so,(1) delay, or prevent his testimony

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 27

in the ongoing official State divorce proceeding, and (2)cause him to — (A) withhold testimony, and to (3)hinder, delay, or prevent communication to a law enforcement officer or judge, including reporting Federal Racketeering crimes to the FBI.

70.   People are afraid of Hector and Marilyn Moreno, including Kathia's first husband (Thomas Sorri), plaintiff's counsel Nancy Martinez, and most other opponents and clients of the Moreno Attorneys that Plaintiff has had contact with. Plaintiff has been told "Just give them whatever they want so they will leave you alone", or "They are well connected, I would not f**k with them, they are dangerous". Many attorneys that plaintiff contacted about representing him against Marilyn or Hector Moreno said "Sorry we don't represent clients against them, it just never goes well for anyone, and our clients end up unhappy about the result".

71.   For anyone that has taken law statistics 101, any DV allegations by the Law Firms of Hector and Marilyn Moreno should be suspect for fraud. Since Jan 2016-2019 Marilyn Moreno filed motions citing DV by the opposing spouse in 44/109 = 40% of their cases, while J Hector Moreno filed motions citing DV in 19/39 cases, or 49% (see Exhibit A-A). It strains credibility to imagine that nearly half of husbands they opposed committed domestic violence when the statistical prevalence of domestic violence (according to DOJ statistics 1993-2010, US DOJ Statistics of Domestic Violence) in the US population was less than 0.4% per couple per year.

72.   This submission of falsified DVRO petitions by the Moreno Attorneys is large scale Perjury, Fraud on the Court, as well as tampering with a witness, victim, or an informant, by knowingly using intimidation, threats,

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 28

1   or corruptly persuading another person to influence, delay, or prevent the

2   testimony of a person in an official proceeding.

3

4   73.   This is also interference with and retaliation against a witness, and

5   taking action harmful against that person, including interference with their

6   lawful employment or livelihood – as all DVROs by the Moreno attorneys

7   include a move-out order. This causes the witness to incur additional living

8   expenses, and possible loss of wages or loss of employment - for each victim

9   they falsify a DVRO against. That adds up to **63 counts** of Hector and/or

10  Marilyn Moreno committing these predicate crimes in a racketeering pattern

11  against the individuals in these official divorce proceedings (Exhibit A-A)

12  from 2016-2019, in only 3 years.

13

14  74.   Even more incredulous is that in a majority of DVROs they file, Hector

15  Moreno and Marilyn Moreno state that the husband is dangerous, trying to

16  find the spouse to harm them or kill them. According to DOJ statistics,

17  there were only around 2000 domestic homicides in the USA annually (US DOJ

18  Statistics on Domestic Violence), out of 60M couples, or 0.003%. So, unless

19  there is a massive selection bias and the Law Firms of Hector and Marilyn

20  Moreno are getting all of the Bay Area DV cases, and out of those, all have

21  husbands that have suddenly emerged from being normal people with no history

22  of violence or criminal record, to become killers, this is highly

23  implausible. Rather, this is evidence of a pattern of systematic

24  racketeering activity with predicate crimes committed by the Moreno

25  attorneys multiple times a year, against dozens of people, a pattern that is

26  exposed by the sheer weight of the statistics.

27

28

75. Plaintiff (Kathia Oster's) first divorce was with these same attorneys, Hector and Marilyn Moreno in 2005-2009 vs Thomas Sorri, where Marilyn Moreno also filed a falsified DVTRO against Thomas Sorri in 2005, committed perjury, and made false DV claims against him, with the goal of Extortion (18 U.S. CODE § 1951) in the divorce settlement. Kathia later fired Marilyn in April 2006, refuted her DVRO claims (showing they were false), and started talking directly to Thomas Sorri to try and reconcile their marriage and later in 7 Jun 2006, attend a hearing and signed a stipulation to appoint a temporary judge to oversee any dissolution, without attorneys representing them (Exhibit D).

76. There was no further activity in their divorce proceeding until 25 Jul 2008, when Hector Moreno filed a motion for attorney's fees, then substituted in as Kathia's counsel on 29 Aug 2008 to reinstate the DVRO and complete the plans Marilyn originally had - to use perjured DV claims and the fraudulent DVRO plus threats of police actions to Extort (18 U.S. CODE § 1951) real-estate from Thomas Sorri, convey it to Kathia Sorri, then to try and Extort the equity from her via attorney's fees.

77. This Extortion is evidenced that in the final divorce settlement (Exhibit D, 10 Nov 2009) Hector Moreno finally reduced the DVRO against Tom Sorri to a civil stay-away order in exchange for Thomas Sorri conveying ownership of a home in San Jose to Kathia Sorri (Exhibit D), by an act of Extortion (18 U.S. CODE § 1951) (b)the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened fear. In this case Tom was in fear of Hector Moreno making the DVRO permanent or filing charges of RO violations against it.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 30

78.   In these acts from 2005-2011, advising their client to falsify reports to police and the courts – Hector and Marilyn Moreno in violation of the Attorney Code of Conduct Chapter 3, Rules 3.1, 3.3, and 3.4, and constituted criminal acts of Perjury under California Penal Code Section, and so in these acts, Hector and Marilyn Moreno were acting unlawfully outside of their attorney litigation privilege, and their actions are NOT exempted from RICO.

79.   Hector and Marilyn Moreno used intimidation, threats, and corruptly persuaded Plaintiff (Kathia Oster) to engage in misleading conduct toward the Santa Clara Family Court by falsifying statements in a DVTRO petition against Thomas Sorri, and by doing so,(1) delay, or prevent his testimony in the ongoing divorce proceeding, and (2)cause him to – (A) withhold testimony, and to (3)hinder, delay, or prevent the communication to a law enforcement officer or judge, including to a Federal officer about the crimes of Racketeering and Extortion he was a victim of.

80.   Plaintiff corresponded with Thomas Sorri in 2018, and he said he was "terrified of the Morenos, because they were so well connected, and Brent should just give them what they want to get them to go away". He was genuinely in great fear of them, even 9 years later.

81.   Hector and Marilyn Moreno knowingly, with the intent to retaliate, took action harmful actions against Thomas Sorri, which including interference with his lawful employment or livelihood, as he ran his tile contracting business from his home, and he was forced from the home by their fraudulent DVRO and move-out order, interfering with his income (Exhibit D).

82.   Plaintiff (Brent Oster) started dating Kathia in Oct 2008 and in 2010 overheard a phone call in which her divorce lawyers threatened Kathia. Kathia decided to just settle her divorce. Hector forced Kathia to sign a document stating that she was accepting a settlement offer against their advice - Hector's attempt to intimidate her into not settling — and run up more legal fees and Extort (18 U.S. CODE § 1951) her house from her by instilling fear. See (Exhibit D) for excerpts of that divorce case.

83.   Once they were fired from Kathia's divorce against Thomas Sorri, Hector and Marilyn Moreno responded by threatening Kathia, saying if she did not pay her legal fees, they would have to refer the debt to a collection agency, or they would order the sale of her home (their original plan). This was Extortion (18 U.S. CODE § 1951), trying to make Kathia pay excessive fees for their over-litigation and fraud in that 2005-2011 divorce. Brent loaned Kathia the $47,000 required to pay off that debt to the Moreno Attorneys in 2010, and they removed their lien from her home.

84.   These two divorces, 8 years apart, are solid evidence of Hector and Marilyn Moreno managing an Enterprise with a pattern of such racketeering activity with similar RICO criminal acts against the same individual (Plaintiff Kathia Oster) - within a 10-year span (Thomas Sorri had a home Extorted from him in 2010 by fear of a fraudulent DVRO obtained by perjured statements, as did Brent Oster in Jan 2019).

85.   Hector and Marilyn Moreno's overall case statistics in Exhibit A-A and Exhibit F also show a clear pattern of Racketeering Activity (18 U.S.C. § 1962(c))with criminal acts of Fraud (Perjury, False Reports of Crimes),

Extortion (18 U.S. CODE §  1951), and/or Colluding and Conspiring (18 U.S.C. § 1962(d)) with the other persons operating the Enterprise.

86.  Starting with DOJ Statistics that state that DV in a given relationship in a year is only 1/250 or 0.4% likely to be happen, and the probability a domestic partner will murder their partner in a year as 1/30,000 = 0.0033% likely to happen, then DV in two separate divorces for Plaintiff (Kathia Oster) and the Law Firms of Hector and Marilyn Moreno (they did her first divorce with Thomas Sorri 2005-2008 with a similarly worded DVRO) puts it at 1/250 X 1/250 = 1/62,500 or 0.0016%, odds of being true that both her first husband (Thomas Sorri) and Plaintiff (Brent Oster) committed acts of DV against her, and 1/30,000 x 1/30,000  = 1/900,000,000 (far beyond lottery odds) that she was in danger of being murdered both times, and yet both husbands (Thomas Sorri and Plaintiff (Brent Oster)) were prosecuted, intimidated, threatened, and extorted aggressively for both 'potential crimes' by the Law Firms of Hector and Marilyn Moreno.

87.  Only unlawful and criminal behavior can explain their ridiculously skewed statistics for falsely reporting DV and obtaining DVROs against almost half their opponents. They cannot even use the excuse of 'erring on the side of caution' and acting in their client's best interests, because once a DVTRO is granted they methodically 'continue' or extend it indefinitely without a trial, and on average Hector continues a DVTRO for 8 months and Marilyn 10 months on any DVTRO in their case (Exhibit A-A). They know if they get taken to trial, they will lose the fraudulent order and their ability to use Extortion to skew the settlement and could be liable for any damages if their claims prove false. They will stop at nothing to keep a trial from happening, and none of the DVROs issued by Hector Moreno

nor Marilyn Moreno ever see a trial in family court. Plaintiff (Brent Oster) spent 3 years trying to get one.

88.   The laws governing DVROs and RO violations are in violation of the Constitution, including the 4th, 6th, and 14th Amendments. If the husband gets accused of 'violating' a DVRO (by even inadvertent or indirect communications) like Plaintiff (Brent Oster) did for putting nice notes ('Here4U', 'I Still Care', and 'Merry Christmas') on large, voluntary bank transfers and checks, the Law Firms of Hector and Marilyn Moreno help their client file false report of a crime with grossly exaggerated and/or false, threatening motives and ridiculous danger scenarios. The accused gets a warning, then next time he gets arrest, and each time that happens, the charges compound, because each 'RO violation' carries its own new restraining order, so they can grow exponentially and the husband gets put in jail and kept there because he is declared a dangerous offender (without ever being tried or convicted of any crime, or having any evidence brought against him). The California penal codes for PC 273.6 are in violation of the Fourteenth Amendment in their writing and in their enforcement. They are only a tool for Extortion by instilling fear and do nothing to protect anyone.

89.   Having set this background of how egregious the conduct of Hector and Marilyn Moreno, and their law firms and employees is in general, and how it comprises a pattern of racketeering activity, Plaintiff (Brent Oster) will focus on the specific misconduct by them in his divorce case. The misconduct in Plaintiff (Brent Oster)'s case is quite typical of their racketeering activities in these other cases – Fraud (deceit, concealment, perjury, false reports of crimes, breach of contract/stipulation), Extortion(18 U.S.C. §

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 34

1951),  Tampering or Interfering with a Witness (18 U.S. CODE § 1512),

Retaliation against a Witness or Victim (18 U.S. CODE § 1513), and Money

Laundering (18 U.S. CODE § 1956, 1957), although the retaliation was more

egregious in Plaintiff's case because they were taking extreme actions to

tamper and interfere with Plaintiff and retaliate against Plaintiff (Brent

Oster) because he was reporting them to the State Bar of California, Police,

and FBI).

### STATEMENT OF FACTS – PART 1c
### HECTOR AND MARILYN MORENO
### CRIMINAL ACTS vs PLAINTIFFS

90.  Hector Moreno is an attorney leading the Law Firm of J Hector Moreno.

Before the divorce was filed, he coached his client, Plaintiff (Kathia

Oster) to make a false report to Gilroy police 13 Sept 2017 and sent them to

visit and intimidate plaintiff (Brent Oster) by entering his home without a

warrant (nor invitation) in violation of his 4th Amendment rights and yelling

at him to sit on his stairs while they held their hands on holstered

weapons, ready to draw. They used excessive force because Hector Moreno had

conspired to create false reports to them that plaintiff (Brent Oster) was

suicidal, bipolar, aggressive, and armed. This was a crime of Tampering or

Interfering with a Witness (18 U.S. CODE § 1512), to interfere with

Plaintiff from making a truthful police that his wife, Kathia Oster had

battered him 2 Sept 2017, and to FBI that this was the beginning of a

pattern of Racketeering By Hector Moreno. Plaintiff had seen their pattern

in Kathia's first divorce and knew this was their plan.

91.   On 13 Sept 2017, In violation of 18 U.S. CODE § 1512, Hector Moreno corruptly persuaded Plaintiff (Kathia Oster) to engage in misleading conduct toward the Gilroy Police Department by falsifying statements that Plaintiff (Brent Oster) was suicidal, armed, and bipolar, with the intent to have Plaintiff (Brent Oster) aggressively interviewed by police, and by doing so,(2)cause him to — (A) withhold testimony, and to (3)hinder, delay, or prevent the communication of the crime of a 2 Sept 2017 battery by Plaintiff (Kathia Oster) against him and prevent the communication of a crime of initiation of a criminal pattern of Racketeering (18 U.S.C. § 1962(c)) - to a Federal law enforcement agency (FBI).

92.   The police visit 13 Sept 2017 was for a "Safety Check" because that false report had been made that Plaintiff was suicidal, when in fact he was fine, and was home, resting, in his underwear, chatting with the young woman that would become his wife a few years later. The police were reacting to Hector Moreno's false depiction in the report.

93.   On 14 Sept 2017 The Law Firm of Hector Moreno filed a divorce petition and fraudulent DVTRO against Plaintiff (Brent Oster) as they do with 49% of their opposing spouses (Exhibit A-A). The DVTRO petition (Exhibit A-G) on behalf of Plaintiff (Kathia Oster), was written by Joseph Tang, and signed by Hector Moreno and Plaintiff (Kathia Oster). This DVTRO petition contained provably false statements that were fabricated by Plaintiff (Kathia Oster) and Joseph Tang, that completely contradicted previous police reports (Exhibit A-E) made by Plaintiff (Kathia Oster) Oster on 15 Aug 2017 and 5 Sept 2017, where Plaintiff (Kathia Oster) reported no harm to her, and police officers both times found no evidence of harm or injury, nor any evidence of threats by Plaintiff (Brent Oster). Plaintiff (Kathia Oster) had

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 36

even asked police even asked "can I make a police report without pressing charges" when speaking with the police, implying she was just reporting based on Hector Moreno's instructions, not reporting an actual crime.

94.  Plaintiff (Kathia Oster), Hector Moreno, and Joseph Tang deliberately made these false statements in the DVTRO despite having full knowledge of that they were contradicting previous reports by their client and reports and observations by police. As well they had pictures and other evidence that showed Plaintiff (Brent Oster) was injured and had torn clothing on the night of 2 Sept 2017, and was the real victim of an assault, not their client, Kathia. She (5'2", 118 lbs) did not have a mark on her, while he (6'2", 240 lbs) had large bruises and torn clothing (Exhibit A-F).

95.  Joseph Tang, Hector Moreno, and Plaintiff (Kathia Oster) chose to ignore all these facts and commit deceit and perjury towards the court. Hector Moreno had all the truthful information as he had been coaching Kathia for months and would have pulled these reports before writing a DVTRO. Despite knowing the content of the prior police reports, and his client's prior claims, Joseph Tang and Hector Moreno chose to blatantly perjure and contradict them in the DVTRO. Joseph and Plaintiff (Kathia Oster) also cite additional imaginary assaults and threats of harm at other times, despite the fact that even Plaintiff (Kathia Oster's) prior police reports (Exhibit A-E) showed on 15 Aug 2017 and 5 Sept 2017 that Plaintiff (Kathia Oster) claimed no harm nor threats made against her to date, including filling out a checklist stating so.

96.  At the end of their DVTRO petition, Hector Moreno and Plaintiff (Kathia Oster) include a partial segment of a text message (omitting the surrounding

text messages and context completely) from Plaintiff (Brent Oster) to

Plaintiff (Kathia Oster) containing a video link that they completely

misrepresented as showing 'any trigger can set husband off and instigate his

threats to kill me'. It fact it was a video of Shrek the Ogre roaring for

the entertainment of his family and friends, who cheered, because they were

asking him to roar. It had nothing to do with murder or threats of murder.

97.   Including this piece of misconstrued and falsified 'evidence' is

another example where Hector Moreno and Plaintiff (Kathia Oster)

deliberately used Perjury in this DVTRO petition, taking a small clip of a

message out of context and knowingly contradicting the facts in the full

text of the message, which was Plaintiff (Brent Oster) asking her to stop

verbally abusing him and pursuing him when he tried to get away, which she

did 2-3 times a week in June-Sept 2017. This was an act of discrimination

against a disabled person, under 42 U.S. Code § 12132 when it was submitted

as perjured testimony with the purpose of fraudulently getting an DVRO order

for use in malicious prosecution and Extortion against Plaintiff (Brent

Oster).

98.   Plaintiff (Brent Oster) never saw Plaintiff (Kathia Oster) after 3 Sept 2017, and at that

point in time, there were no reports, nor evidence, nor factual testimony that would possibly

support that there was any act of DV by Plaintiff (Brent Oster) against Plaintiff (Kathia Oster)

before or on that date, and all other statements after that date making such accusations were

fraud: falsified police reports and perjured court filings.

99.   Plaintiff (Brent Oster) filed an Attorney Misconduct Complaint with the

State Bar of California vs Hector Moreno, Joseph Tang and Plaintiff (Kathia

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 38

Oster) for making perjured statements in the DVTRO, where they fraudulently stated that Plaintiff (Kathia Oster) was threatened, assaulted, AND harmed on Aug 13, and well as Sept 2/3, 2017, when her existing police reports and the statements by (and examination by) the police officers clearly showed she was not injured in any way, and there was no evidence of threats made against her, after looking at all their textual communications.

100. In violation of (18 U.S. CODE § 1512), in a pattern of racketeering, Hector Moreno used intimidation, threats, and corruptly persuaded Plaintiff (Kathia Oster) to engage in misleading conduct toward the Santa Clara Family Court by falsifying statements in a DVTRO petition, with intent to have Plaintiff (Brent Oster) evicted from his home, and by doing so,(1) delay, or prevent his testimony in the ongoing divorce proceeding and from making any Federal Civil RICO complaints or reports to FBI, and (2)cause him to — (A) withhold testimony about the assault on Plaintiff (Brent Oster's) person and withhold testimony about the initiation of a pattern of Racketeering Activity (18 U.S.C. § 1962(c)) by Hector Moreno against Plaintiff, and to (3)hinder, delay, or prevent the communication to a law enforcement officer (Municipal Police and/or FBI), or to a judge these facts.

101. These fraudulent claims of DV in a DVRO petition, and police reports were very damaging, as when worded with exaggerated and catastrophic language with lies about Plaintiff (Brent Oster) being threating and potentially having homicidal intentions, as the Law Firms of Hector and Marilyn Moreno wrote them, the DVRO was issued by the court without any evidence, without a trial, in violation of 6th and 14th Amendment rights, and a non-violent individual like Plaintiff (Brent Oster) got basically instantly charged (convicted?) as being a domestic violence offender.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 39

102. Plaintiff (Brent Oster) was kicked out of his house in 17 Sept 2017, had his 2nd amendment rights revoked, had property seized, lost his job and has had no substantial income for the 3.5 years since because his life has been so disrupted by these crimes by Hector and Marilyn Moreno and the other operators of the racketeering enterprise and their conspirators.

103. Plaintiff (Brent Oster) was viciously harassed in violation of (18 U.S. CODE § 1513) Retaliation against a witness - because the Law Firms of Hector and Marilyn Moreno coached their client to file voluminous false reports of crimes, such as RO violations with reports of everyday events and items around the house (t-shirts, camping gear) as threatening and violations of the DVRO - and added false claims of Plaintiff (Brent Oster) being dangerous, and of Brent having intentions of coming to kill Plaintiff (Kathia Oster) - when in fact he was living in Honduras with his fiancée in 2018.

104. This is How Hector and Marilyn Moreno instill such fear in their opponents – by beginning their pattern of racketeering by falsifying court orders and police reports and conspiring and colluding with inside contacts in the Family Courts and at the DA office to bring false orders against their opponents, eviction of their opponents from their homes, loss of employment and income, and malicious prosecution by police with excessive force - right from the start of a divorce proceeding, to interfere with and harass their opponent to put them in fear, and prevent reporting against themselves and by doing so, obstructing justice.

105. Given these vicious tactics and false reporting, Plaintiff would probably be dead from a negligent shooting / police homicide / use of excessive force if he had not retreated to live in Honduras during most of the official divorce proceeding and started a new life with his 32yr old fiancée in Tegucigalpa, Honduras, (reputed to be THE most dangerous city on earth). It now ranks 2nd to Gilroy, California.



106. Plaintiff (Brent Oster) found representation with Dana Kruger in Sept 2017 and later Nancy Martinez in Feb 2018. Dana was previously a financial attorney and spent 2 months compiling a detailed propertizer (Exhibit I-F) that was later vetted by Nancy Martinez showing that if Plaintiff (Brent Oster) kept the Gilroy House, and Plaintiff (Kathia Oster) took the San Jose House, all other things being equal, that Plaintiff (Kathia Oster) would owe Plaintiff (Brent Oster) an equalizing payment of $97,188 (Exhibit K-1). Dana helped Plaintiff (Brent Oster) prepare a response to the DVRO that showed

Plaintiff (Brent Oster) was actually the victim of an assault by Plaintiff (Kathia Oster) with a dozen pictures as evidence.

107. Soon after this, Hector Moreno resigned as Plaintiff (Kathia Oster's) Counsel. Plaintiff (Kathia Oster) had more reasonable counsel from Jan – March with Gina Azzolini, and a settlement was reached at end of March to conclude the divorce proceeding amicably. There was still $360,000 in the retirement that would be split, nobody had criminal charges against them, and each party could have taken one house, with Plaintiff (Kathia Oster) getting some money and spousal support, and everything could have been fine. (Exhibit K-2) has a summary of the terms of that settlement. Again this would have been a lawful settlement.

108. In late March 2018, Plaintiff (Brent Oster) put two anonymous comments on The Law Firm of J Hector Moreno's website, one offering services in "Victim vs Assailant" identification by Artificial Intelligence doing picture classification, and another service teaching Law Stats 101 about the actual statistics of domestic violence and murder by spouse in the US. The overtone was that Hector was liable for his falsifications in these areas. Plaintiff (Brent Oster) was in fact preparing a civil lawsuit against Hector Moreno, and putting him on notice in a tongue-in-cheek way. In retrospect, this was a fatal mistake against these vicious predators.

109. Suddenly Marilyn Moreno of the Moreno Family Law Firm came in to represent Plaintiff (Kathia Oster) in April 2018. Plaintiff (Brent Oster)'s attorney, Nancy Martinez, cautioned that Marilyn Moreno was known for her extraneous and unethical litigation, as well as misusing protective orders and helping her clients file false reports to the courts and police about DV

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 42

and RO violations to place the opposing spouse under duress then to
fraudulently Extort assets and real-estate from them. Plaintiff (Brent
Oster)'s lawyer, Nancy Martinez literally said "She is going take
everything, make you sell your house, and probably try to put you in jail,
and there is probably nothing I can do about it". Plaintiff made the
decision to self-represent pro-se, and hopefully resolve the settlement as
peacefully, expediently, and without litigation by removing a lawyer as a
target for Moreno (Exhibit A: C-B).

110. There was no reason for Marilyn to be in this divorce. Plaintiff
(Kathia Oster) had a settlement offer from Plaintiff (Brent Oster) that was
better than what she was lawfully owed (Exhibit K-2), that they were close
to signing, and there was nothing that Marilyn could do to make it better
for Plaintiff (Kathia Oster) legally. The only reasons for Marilyn Moreno to
be there was to cause further and unnecessary litigation, run up legal fees,
defraud and extort property from plaintiffs, and, most importantly,
interfere with Plaintiff (Brent Oster) as a witness, and interfere with the
reporting of Hector's crimes in this divorce proceeding, and of Hector and
Marilyn's crimes in Kathia's first divorce proceeding. They knew they were
exposed to criminal and civil liability.

111. Plaintiff (Brent Oster) will show detailed examples in his case where
they worked very hard to interfere and tamper with him as a witness, and
deliberately excluded him from hearings - twice, on 11 Jun 2018, and 17 Sept
2018 (Exhibits C-C through C-F, A-I, A-J, A-K), and even worked with their
client to file fraudulent reports to police to get criminal charges and an
arrest warrant against Plaintiff (Brent Oster) a week prior to a 17 Sept
2018 DVRO hearing to exclude him (Exhibit A-I, A-J, A-K, B-B). This was all

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 43

done to prevent him from putting a DVRO Trial on the calendar and revealing their fraud and perjury. This was deliberate interference with him as a witness and harassment. Plaintiff never succeeded in getting any hearing or trial in the DV issues in the divorce proceeding as they were continued all the way to 2021 while he repeatedly demanded a trial in his filings. The most he was able to do was to file his own DVRO vs Plaintiff (Kathia Oster) in Dec 2018, citing her assault on him and her continued stalking online and through neighbors and friends.

112. Plaintiff (Kathia Oster) worked with Marilyn Moreno and her attorneys Shelley O'Brien, and Karl Nastrom in April 2018 through Feb 2019 to file an enormous number of false and frivolous RO violation reports and even a false diary (written post-separation) of DV crimes by Plaintiff (Brent Oster) with exaggerated and unsubstantiated claims of threats and (nonexistent) danger wrapped around ordinary events and communications, and creating imaginary situations, desperately trying to get restraining order violation charges against Plaintiff (Brent Oster) in 2018-2019.

113. Even while Plaintiff (Brent Oster) was living out of country most of 2018, they claimed fear of harm and risk of harm against Plaintiff (Kathia Oster) and falsely made-up instances of him being in proximity of Kathia Oster, and stated that he was looking for her to find her and kill her all in in maliciously false reports of crimes (From Exhibit A: C-J).

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 44

1
2
**Exhibit C-J** Selected Quotes of False Police Reporting with claims of risk of harm

3
4
Brent came out of the restroom and turned the wrong way, realized it, then turned around - becomes:

5
6
7
On or about 5/29/18, the Osters had a court hearing in reference to their divorce. At the end of the hearing, Brent started walking towards Katia and Marilyn Moreno in the hallway of the courthouse. Katia assumed it was to make contact with her. When Moreno saw Brent approach, she stood up, and reminded Brent of the no contact order, and advised him to walk away. Brent complied without incident. I attempted to speak with Moreno in reference to this incident. I contacted the law office on 6/21/18, and learned Moreno was on vacation until 7/9/18. I attempted contact the week of 7/9/18. Moreno returned one of my calls, leaving a voice mail message. She did not return my follow up call to that message as of this report writing.

8
9
10
Brent did not want to list the Gilroy home address on his company web page, so he just put the address of the leasing office in Santa Clara for a NEARBY office complex (1/2 mile away) becomes:

11
12
When I first spoke with Kathia, she did not have any material she was referencing with her. We spoke briefly about a safety plan, as she found out Brent opened an office near a school she is currently attending. Kathia felt Brent picked this location purposely, and he may pose a threat due to his history of bipolar disorder.

13
Which leads to:

14
15
Katia stated she is in fear of safety of Brent, and views these attempts at contact as a way to re-enter her life, and eventually hurt her physically. As such, she asked for this case to be resubmitted to the District Attorney's Office for further review and complaint on Brent for PC 243(e)(1) and PC 273.6.

16
17
18
19
20
21
22
23
24
25
26
27
114. Karl Nastrom is the "Muscle" of the racketeering Enterprise. As the Jefa, Marilyn does not tend to get her hands dirty with overt threats, intimidation or Extortion very often, so Karl is tasked with sending the threatening warning letters to the opponent, helping the client compose and file the false reports of crimes, and for helping the client make false calls to police, like he tried to on 2 Aug 2019, but found out the police were forewarned, and they knew Plaintiff (Brent Oster) was in the courtroom with Karl Nastrom, with plenty of security around, and NOT a threat like Karl was claiming. Plaintiff had warned Police and the State Bar in writing, 6 days in advance that Karl Nastrom would attempt this false reporting of a crime. He's predictable.

28
COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 45

115. Karl Nastrom obstructed Plaintiff (Brent Oster) from hearings on that DVTRO on 11 June 2018 and he and Shelley O'Brien worked to obstruct him from attending a DVRO status hearing on 17 Aug 2018.

116. On 11 June 2018, Plaintiff (Brent Oster), Plaintiff (Kathia Oster) and Karl Nastrom (employee of Moreno Family Law Firm) were waiting outside the courtroom for a scheduled DVRO status hearing, which Plaintiff had communicated to Karl via e-mail the day before that he wanted to attend and to call for a trial on the DVRO against him so he could testify against the fraudulent accusations.

117. Plaintiff briefly left to go to the restroom before the hearing started, then Karl Nastrom went into the courtroom, and continued the hearing without Plaintiff present (Exhibit A: C-C through C-F). As Plaintiff returned, he saw Nastrom coming out of the Courtroom, asked him what was happening, and Nastrom stated "It's done, we continued it". When Plaintiff later tried to obtain a transcript of the hearing, there was no transcript or any record of Karl's actions to continue the hearing.

118. This was a deliberate violation of 18 U.S. CODE § 1512 in that Karl Nastrom knowingly engaged in misleading conduct toward the court clerk, and/or judge, with intent to (1)influence, delay, or prevent the testimony of any person in an official proceeding, and (2)cause or induce any person to (A)withhold testimony, or withhold a record, document, or other object, from an official proceeding;(C)evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or (D)be absent from an official proceeding to which

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 46

such person has been summoned by legal process. They wanted their client to

hold onto the fraudulent DVRO and avoid a trial at all costs.

119. In a 29 May 2018 Settlement hearing, Marilyn Moreno committed a crime

of Extortion against Plaintiff (Brent Oster), by making a verbal threat that

she would make the DVRO against him permanent. By fear of such action, Brent

willfully signed a stipulation that would assign 100% ownership of the San

Jose House to Plaintiff (Kathia Oster), but understanding from that

stipulation that he would get 100% ownership of the Gilroy House as they had

agreed to.

120. However, Marilyn asked Plaintiff (Brent Oster) for some further

documentation before signing the Gilroy House over to him, which he supplied

to Marilyn by the June 17 deadline, But Marilyn never had Plaintiff (Kathia

Oster) sign over the Gilroy House as promised.

121. Before the next settlement hearing on 13 Aug 2018, Plaintiff (Brent

Oster) was called by Gilroy police about some reported (but frivolous and

even accidental RO violations):

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 47

Prior to running through the list of the violations Kathia provided, I stated that the violations occurred after the order was served in September 2017. Brent never contested this fact, and throughout our conversation was aware the order existed.

### Wells Fargo Transfers

On 12/15/17, he transferred $5000 to Katia with the message "Merry Christmas". On 04/02/18, he transferred $5000 to Katia with the message "I care for you". On 6/29/18, he transferred $5100 to Katia with the message "here4u". Brent affirmed that he sent these three messages, and clarified the "here4u" message was sent to Kathia meaning, here is money for you, or I am here for you.

### iPhoto Account

On 3/31/18, Katia received an email from Brent asking her to subscribe to a shared iPhoto account entitled, "Brent and Katia Cute Photos". There was no message with the request, only the form email created by Apple for the subscription to the account. Brent said he did not send this request, and it may have been sent to her accidentally when he was deleting the album.

### 4/19/18

Brent sent an email to Katia with the subject line, "Settlement Offer". Attached to the email was a word document, which was presumably a divorce settlement offer. Brent said he sent the email to Kathia, after he sent the same offer to Kathia's attorney and did not hear back from her after a week or two had passed.

### 4/30/18

Brent sent an email to Katia sharing a Dropbox account entitled "Brent Oster financial documents and disclosures". This was the only message included with Dropbox's form email inviting one to share this file. Brent admitted to sending this message Kathia.

### 5/2/18

Katia provided a copy of a letter and an email sent to Brent by her attorneys Marilyn Moreno and Karl Nastrom. The letter reminded Brent of the no contact order and directed him to cease his attempts in contacting Katia and direct all correspondence to the law office. Brent said he did receive this email from Nastrom, but could not recall the exact date it was received.

My conversation with Brent was recorded with a digital voice recorder. The recording was later transferred to disk and booked into evidence.

122. In the 13 Aug 2018 Settlement Hearing, Marilyn Moreno demanded the sale of the Gilroy House and demanded that Plaintiff (Brent Oster) convey 50% of the sale equity to Plaintiff (Kathia Oster), which was far in excess of the amount calculated on a propertizer (Exhibit K-1, Exhibit K-2), or that Brent had offered her in a any prior settlements. Because Brent was in fear from the police calling him a week before about RO violations he was accused of, he went into the 13 Aug 2018 hearing, this was an attempted act of Extortion in violation of (18 U.S. CODE § 1951) by Marilyn Moreno. Plaintiff (Brent Oster) stood up and walked out of the settlement hearing and made reports to State Bar and Police about her attempt at Extortion.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 48

123. Hector Moreno, Marilyn Moreno, and their employees instructed their client, Plaintiff (Kathia Oster) to falsify reports to police From Jun 2017 through Feb 2019, and helped her falsify documents which they submitted to the court, knowing there were deliberately deceitful statements that they knew not to be true - in the police reports and court documents. By doing so, the Moreno attorneys and their subordinates committed State crimes of submitting false reports of a crime, and perjury, fraud on the court.

124. Marilyn Moreno, Hector Moreno, their attorneys, and Kathia Oster even tried to claim Plaintiff (Brent Oster) was in unlawful possession of firearms (in perjured court statements and in fraudulent police reports), to elicit an arrest warrant against Plaintiff (Brent Oster) without any probable cause of being a threat nor intending any harm towards Plaintiff (Kathia Oster) in any way, especially since he was living in Honduras with his fiancée most of the time from separation in Sept 2017 to March 2019.

125. These false statements to police also placed Plaintiff (Brent Oster) in possible danger from excessive force and negligent police shooting because they were so deeply misinformed of the situation that they may have reacted to an innocuous situation with excessive force just due to discrimination against Plaintiff's disability (as per Sheehan v. City County of San Francisco, No. C 09-03889 CRB). Plaintiff had already had police enter his home once, uninvited without a warrant, on 13 Sept 2017, violate his 4th Amendment rights, and yell at him to sit on his stairs while the police held their hands on their holsters, ready to draw, a very frightening possibility.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 49

126. It is evidenced that Plaintiff (Kathia Oster) was being coerced to write the police reports because they were written with complex language and used specific legal terms (like "Exhibits") that Plaintiff (Kathia Oster) would never have known or understood because she has no legal training and she only uses simple, childlike language when communicating. Hector and Marilyn Moreno put Kathia in fear that she would not get a good settlement in the divorce (like Marilyn Moreno did with Jenifer Ninan in her divorce – Exhibit E),

127. The 'decoration language' about false danger and threats of harm in the police reports and DVRO petition was also identical from case to case with the Law Firms of Hector and Marilyn Moreno and is like a signature. Also, Plaintiff (Kathia Oster) is simple and has a childlike demeanor and does not take any action without explicit instructions and always asks 3-4 times to confirm what to do, as their attorney-client communications will show when we demand them in discovery. She was coached and directed at every step though this deliberate racketeering pattern by the Law Firms of Hector and Marilyn Moreno and their fellow operators of the Enterprise. Then she became their victim at the end and was defrauded of all the property.

128. The Law Firms of Hector and Marilyn Moreno also do not have Plaintiff (Kathia Oster) report violations when they occur, which they would be obligated to if there was a real risk of harm and they were made aware of it. Instead, they had their client submit RO violations strategically, to time them with their settlement and litigation goals. For example, the RO violations filed against Plaintiff (Brent Oster) in Sept 2018 were up to 8 months after the fact, but suddenly became urgent and threatening and had to be reported (and acted on) coincidentally right before key hearings and

settlement conferences (or after if the Law Firms of Hector and Marilyn Moreno did not get what they wanted in the conference). This is an ethical and legal breach, as in California, a lawyer "shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute." (California Rule of Professional Conduct 5-100(A) (2017)) and constitutes Extortion (18 U.S. CODE § 1951) under the Hobbes Act.

129. Right before criminal charges and an arrest warrant were issued against Plaintiff (Brent Oster), on 24 Aug 2018, Marilyn Moreno sent him an e-mail asking him when he would be travelling from Honduras to California (Exhibit A: C-I), so she knew in fact he was NOT in California when she instructed her client to make a report on 30 Aug 2018 of an e-mail from Plaintiff (Brent Oster) that was sent two weeks prior when he was in Honduras, and NOT in any proximity to Kathia. They decided to make a false report that he was threatening her - when he was just informing her of her attorney's criminal pattern, forwarding her a police report and State Bar report he had made against them, and asking her to seek better counsel. The fact that this communication got charged as a crime, but the reporting of extortion, real-estate fraud got 'booked into evidence as irrelevant' (Exhibit L) by Gilroy Police and the DA was disgraceful, and a blatant violation of Plaintiff Brent Oster's 14th Amendment Rights to equal protection of laws.

130. This pattern of pre-meditated, choreographed false and exaggerated reporting of crimes was purely done to intimidate Plaintiff (Brent Oster), place him in fear, interfere with him as a witness, prevent him from reporting crimes and testifying to Municipal State and Federal authorities and judiciary – causing them to just ignore his reports and 'book them into evidence' as above. Then when Plaintiff (Brent Oster) was in fear, they

would commit the crime of Extortion against him and defraud him of property. By doing so, Marilyn Moreno, Karl Nastrom, and others were acting on behalf of the Enterprise for their and the other operator's racketeering pattern goals.

131. These acts of Marilyn Moreno, her employees and the other operators of the Enterprise and their conspirators coercing Plaintiff (Kathia Oster) to make false reports to police and commit perjury in the courts from June 2017 to Feb 2019, in order to retaliate against and interfere with Plaintiff (Brent Oster) as a witness and prevent him from testifying and appearing in court is in violation of the Attorney Code of Conduct Chapter 3, Rules 3.1, 3.3, and 3.4, and constitutes criminal acts of Perjury under California Penal Code Section 118, and false reports of crimes under Penal Code 148.5, and so in these acts, Marilyn Moreno was acting unlawfully outside of her attorney litigation privilege in the State of California. Marilyn and her attorneys were misleading, threatening, and intimidating her client to commit fraud in false police reports, perjured statements in court documents and perjured statements in hearings.

132. They did so with the goal of Extortion (18 U.S. CODE § 1951) of real-estate and other property from both Plaintiffs, and to interfere and tamper with Plaintiff (Brent Oster) as a witness in State and Federal proceedings to keep him from reporting their crimes to the Municipal Police, DA, and FBI - in violation of (18 U.S. CODE § 1512) and retaliate against him for his lawful reporting to the State Bar, Municipal Police, DA, and FBI, in violation of (18 U.S. CODE § 1513).

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 52

133. The known police reports by Kathia, coached by Hector Moreno, Marilyn Moreno, and their staff produced to Plaintiff (Brent Oster) by the DA office (Exhibit L) were on 5 Sept 2017, 11 April 2018, 19 Jul 2018, 26 Jul 2018, 30 Aug 2018, but these were just the tip of the iceberg, and Plaintiff (Brent Oster) has been unable to get further evidence of reporting against him by these parties from the DA, nor any information on who at the DA office prosecuted him.

134. Due to the Moreno Attorney's interference, tampering, and harassment, it was 2020 before Plaintiff could bring any civil action in Federal Court regarding these wrongful acts He filed a Complaint (3:20-CV-01125-JD) in US District Court in Jan 2020, and filed another (5:20-cv-07828-NC) in Dec 2020, with the first action joinder into it. He also made reports of the Moreno's crimes to the FBI (Exhibit F) with those filings as evidence.

135. The deliberately false reports made to police and the DA by Marilyn Moreno, Karl Nastrom, and Plaintiff (Kathia Oster/Portugez)in Aug 2018 resulting in charges against Brent in Sept 2018 were direct retaliation against plaintiff's reporting (of the crimes of fraud, Extortion, and real-estate fraud by Marilyn Moreno) to the police (Exhibit B-A) and State Bar in Aug 2018.

136. This was in direct violation of 18 U.S. CODE § 1512 (b)As Marilyn Moreno and Karl Nastrom knowingly used intimidation, threatened Plaintiff, and corruptly persuaded another person, Plaintiff (Kathia Oster), to engage in misleading conduct toward another person (False reports of crimes to police, Perjury in the family court), with intent to (1)influence, delay, or prevent the testimony of Plaintiff Brent Oster in the divorce proceeding,

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 53

including the upcoming DVRO hearing 17 Sept 2018, and Settlement Trial Jan 2019, and to cause or induce Plaintiff Brent Oster to (A)withhold testimony, or withhold a record, document, or other object, from an official proceeding (his evidence against the DVRO claims). (D) be absent from an official proceeding to which such person has been summoned by legal process (the upcoming DVRO hearing 17 Sept 2018, and Settlement Trial Jan 2019).

137. By use of Fraud (false reports of crimes, perjury), Marilyn Moreno and Karl Nastrom corruptly (2) otherwise obstructed, influenced, or impeded the official proceeding in the family court, and prevented Plaintiff (Brent Oster) from filing a Federal Complaint, and (d)they intentionally harassed Plaintiff (Brent Oster) by sending Police, Sheriff Officers and process servers to his door 3-4 times a week between 8 Sept 2018 – 30 Oct 2018 - thereby hindering, delaying, preventing, or dissuading Plaintiff (Brent Oster) from (1)attending or testifying in an official proceeding (the upcoming DVRO hearing 17 Sept 2018, and Settlement Trial Jan 2019) because he was too afraid to live in his house because of this harassment, so he went to live in Honduras with his fiancée (See Exhibit A, H).

138. This was also a violation of 18 U.S. CODE § 1513 (e) by Marilyn Moreno and Karl Nastrom knowingly, with the intent to retaliate after Plaintiff had filed reports to police and State Bar against them, took these actions harmful to Plaintiff Brent Oster, that interfered with his lawful employment and livelihood, preventing him from being able to live and work in the US and earn any income, and interfered with him providing, to law enforcement officers (FBI) truthful information relating to the commission or possible commission of Federal offenses, including those of Racketeering, Extortion, and Money Laundering cited in this complaint. It was not until Dec 2020 that

Plaintiff was able to file a Federal civil complaint (3:20-CV-01125-JD), and mid 2020 till he was able to submit a report to the FBI, and not until this filing that these crimes have been fully reported.

139. Because of these false charges and arrest warrants, Plaintiff (Brent Oster) was obstructed from a 17 Sept 2018 DVTRO Hearing (he would have been arrested if he showed up), and the Moreno Attorneys prevented the testimony of Plaintiff Brent Oster from being heard in this official proceeding. Plaintiff (Kathia Oster)'s DVRO was made permanent under fraudulent, perjured testimony in his absence. Shelley O'Brien (attorney) and Plaintiff (Kathia Oster) were able to use this time with Judge Emede to commit blatant fraud (submitted in Report):

  a) Telling the Judge they wanted a prove-up on the DVTRO to make it
     permanent without trial.

  b) Lying that Plaintiff (Brent Oster) had deliberately missed a DVTRO
     hearing on June 11 as well as that day. Plaintiff (Brent Oster) was
     obstructed from June 11 hearing by Karl Nastrom continuing the DVTRO
     hearing (before the court reporter started) while Plaintiff (Brent
     Oster) was in the court restroom.

  c) On 17 Sept 2018, Plaintiff (Brent Oster) could not attend the DVRO
     hearing because he would have been arrested immediately due to the
     false reports to police resulting in charges and an arrest warrant.
     Plaintiff (Brent Oster) hired attorneys 14 Sept, but they were unable
     to find the hearing on the calendar, get information from Moreno, nor
     attend it.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 55

d) Marilyn Moreno, Shelley O'Brien and Plaintiff (Kathia Oster) had conspired to commit perjury, and deliberately engineered this solo hearing with a different lawyer, different judge to commit that perjury and fraudulently obtain a permanent DVRO by bypassing due process.

e) They requested that Plaintiff (Kathia Oster)'s DVTRO be made permanent without a trial in a prove-up, and admitted they were waiting to time doing so with the (fraudulent) criminal charges being prosecuted against Plaintiff (Brent Oster)

f) Falsely stating that Plaintiff (Brent Oster) had violated Plaintiff (Kathia Oster)'s DVTRO ten times (without providing evidence)

g) Falsely stating that Plaintiff (Brent Oster) had said he was going to kill Plaintiff (Kathia Oster)

h) Falsely claiming that Plaintiff (Brent Oster) had an office too close to Plaintiff (Kathia Oster)'s 'school' in Santa Clara (UCSC Extension classes)

i) Shelly demanded that Judge Emede extend the boundaries of her DVTRO to get Plaintiff (Brent Oster) to 'move his office'

j) Plaintiff (Kathia Oster) said 'she could see his office from her classroom'

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 56

k) Plaintiff (Brent Oster) has only ever worked from his house in Gilroy and HAS NEVER HAD AN OFFICE. This was blatant perjury.

l) Falsely claiming that Plaintiff (Brent Oster) was in violation of the DVTRO by having a firearm he had not surrendered.

m) Judge Emede looked at the records, found that all firearms had been surrendered, and denied their request.

n) Coupled with their prior false claims that Plaintiff (Brent Oster) was dangerous, and coming to kill Plaintiff (Kathia Oster), this could have resulted in aggressive arrest and possibly harm to Plaintiff (Brent Oster)

140. This permanent DVRO was used to make false charges against Plaintiff (Brent Oster) (not even living in the USA at the time), and to threaten him and dissuade him by sending police, aggressive servers and Sherriff's officers to his house constantly between 8 Sept 2018 – 30 Oct 2018, causing Plaintiff (Brent Oster) and his fiancée great distress as they watched them from Honduras, through his remote security cameras, not having any idea why strangers were constantly pounding on his door.

141. These multiple acts were multiple violations of 18 U.S. CODE § 1512, and 18 U.S. CODE § 1513 by the employees of the Moreno law firms that served to not only to influence, delay, and prevent the testimony and communication of Plaintiff (Brent Oster) to law enforcement (a FBI report on their Racketeering) and from filing civil suits against them to a Federal judge (3:20-CV-01125-JD, 5:20-cv-07828-NC and this RICO Civil Suit were not

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 57

written till 2020), it also caused him to be absent from the official State divorce proceeding.

142. Plaintiff (Brent Oster) was cautious and lived contiguously in Honduras Sept 2018 – March 2019 because he was told if they kept issuing charges, he would be subjected to repeated arrest, compounding the RO violations, and he could be declared dangerous and incarcerated. In this case, or if he has fled the country to escape false and malicious prosecution (like Plaintiff Brent Oster did), and he was NOT present at an asset settlement trial, most of the assets could be awarded to the wife by default. These were acts of dissuasion, intimidation, leading up to Extortion.

143. This is what the Law Firms of Hector and Marilyn Moreno were coaching their client to do, file RO violations at regular intervals so that they appeared as charges with a 1-3 month spacing in Sept, Oct, and Feb. The 'last' violation was actually one of the first e-mails Plaintiff (Brent Oster) sent 8 months prior, with just a settlement offer to Plaintiff (Kathia Oster) (When Marilyn would not respond to him after he sent an offer to her) that was used to make it look like Plaintiff (Brent Oster) was a 3rd time offender.

144. Had he not stayed in Honduras, Plaintiff (Brent Oster) would have accumulated 1 + 3 + 5 = 9 RO violations minimum, with 3 arrests, and probably would have been jailed without bail for the settlement trial, and if he was able to appear, would have been cuffed like a dangerous prisoner. This is an egregious example of racketeering criminal behavior by the operators of the Enterprise – to use fraud in false reports to police, perjury in fraudulent court filings, to misuse the justice system like this

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 58

to bring malicious prosecution, keep him out of country, commit fraud against him, to interfere with, tamper with, and harass plaintiff as a witness, and put him in fear for purposes of Extortion.

145. These false reports of crimes by the employees of the Moreno law firms served to not only to influence, delay, and prevent the testimony and communication of Plaintiff (Brent Oster) to law Federal enforcement (FBI report on their Racketeering) and filing civil suits to a Federal judge (3:20-CV-01125-JD, 5:20-cv-07828-NC and this RICO Civil Suit), it also caused him to be absent from the divorce proceeding.

146. They were also to place him in fear so that Marilyn Moreno and her employees could commit a crime of Extortion as defined by 18 U.S. CODE § 1951 (2) obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear.

147. In Nov 2018, with Plaintiff (Brent Oster) living in Honduras, Karl Nastrom filed for an ex-parte order to sell the Gilroy Home, that would give $60,000 to Plaintiff (Kathia Oster) and to pay their legal fees immediately. They cited a dispute over retirement funds to provide impetus for the ex-parte urgency (Exhibit K-3).

148. This order should not have been granted nor stipulated, as again, Plaintiff (Brent Oster) was out of the country, under duress and in fear from the Moreno Attorneys interference and retaliation (Exhibit A, Exhibit B, Exhibit H) against him via false criminal charges and false DVRO and was forced to agree to a stipulation that was created from the fraudulent claims

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 59

of Marilyn Moreno and Karl Nastrom, without him having any ability to provide his arguments and evidence in the matter(Exhibit K-3).

149.  Insolvent because of the costs of the expensive divorce litigation, having no income for a year and having to live abroad, Plaintiff (Brent Oster) had no money to pay bail until late Feb 2019 and could not come back without being jailed because of the charges and arrest warrants. During this time, he was in Honduras, could not find income for himself nor his startup company, and this cost him further wage loss, caused him to be unable to pay his mortgage and he incur penalties, and delayed the launch of his startup.

150. Plaintiff (Brent Oster) spent from Nov 2018 till March 2019 blindly sending many factual reports and overwhelming amounts of exculpatory evidence to authorities and lobbying them to ask them stand down on enforcing Plaintiff (Kathia Oster) and the Moreno attorneys false claims (that he was coming to harm her), so he could have a civil surrender and not be arrested nor jailed. There was no response from authorities.

151. Because of this, Plaintiff (Brent Oster) was not in the US and could not attend the settlement hearing on 9 Jan 2019 nor could he attend a scheduled settlement trial on 14 Jan 2019. He was under duress and in fear because:

   a.  He was out of country since Sept 2018, and since then, Plaintiff
   (Kathia Oster) (advised by Marilyn Moreno and her attorneys) filed many
   false criminal charges against him. They showed no sign of stopping

   b.  He was facing arrest and jail on return due to their false report of a
   crime (including lies that he was dangerous and coming to kill her).

c.  They made these false claims and filed false report of a crime despite
knowing he was out of the US, living with his fiancée in Honduras.

152. Plaintiff (Kathia Oster)'s attorneys, Marilyn Moreno and Karl Nastrom
were threatening to go to the settlement trial 14 Jan 2019 and take all the
assets from Plaintiff (Brent Oster) because he could not be physically there
to assert any claims on them (Exhibit H).

153. It was under these conditions of fear, with Plaintiff (Brent Oster) not
even present at the settlement hearing, and his attorneys telling Plaintiff
(Brent Oster) he had to settle (Exhibit H) or he could get only $50,000 or
less at the trial if he were not physically present to 'carry his burden',
that Plaintiff (Brent Oster) was forced to accept an unlawful settlement
offer (Exhibit K-4) in a hearing on 9 Jan 2019. This was a crime of
Extortion against Plaintiff (Brent Oster) by Marilyn Moreno and Karl
Nastrom, as defined by 18 U.S. CODE § 1951 (2) obtaining of property from
another, with his consent, induced by wrongful use of actual or threatened
force, violence, or fear.

154. Subsequent evidence submitted by Plaintiff (Brent Oster) directly to DA
Jeff Rosen has shown that the majority of Plaintiff (Kathia Oster)'s /
Moreno's claims were false, and that the few that were true were harmless
communications by Plaintiff (Brent Oster) (filed by them as RO violations),
like putting 'Merry Christmas' on a bank transfer as a comment, or sending
settlement offers by e-mail. There was no DV or threat of harm by Plaintiff
(Brent Oster), ever.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 61

155. When Marilyn Moreno threatened to remove him and force the sale of his house in March 2018, plaintiff replied to her with a blunt letter about the level of prosecution and the cost of the lawsuit he would bring against her and his lawful right to do so. Marilyn Moreno quit the divorce suddenly on 24 March 2019, leaving Kathia Oster self-represented for 2 weeks. Brent framed the e-mail with the threat of a restraining order from Marilyn Moreno and put it in his wall.

156. Marilyn's Nephew Michael Moreno quit the DA Office in his role as a DA prosecutor in the Jan-March 2019 time period (and came to work for Marilyn in the Moreno Family Law Firm), and Karl Nastrom quit her law firm and stopped practicing law. Something big went down in the racketeering Enterprise in Feb 2019 that shook up the DA Office and the Moreno Family Law Firm. The events in the DA office and Moreno Family Law Firm in Sept 2018 – March 2019 need to be investigated by the FBI, as they are significant.

157. Although Plaintiff's reporting did not result in explicit prosecution, there were internal actions at the DA that resulted from the events in March 2019, that resulted in Michael Moreno leaving the DA Office that were concealed from plaintiff and the public. This is clear evidence that there was a connection, and that these parties were engaged in a racketeering Enterprise which got disrupted in March 2019.

158. On multiple occasions from June 2017 to Feb 2019, in violation of 18 U.S. CODE § 1512, Hector and Marilyn Moreno used intimidation, threats, and corruptly persuaded Plaintiff (Kathia Oster) to engage in misleading conduct toward the Santa Clara Family Court by falsifying statements in a DVTRO petition, and in misleading conduct towards Gilroy Police and the Santa

Clara DA by making false reports of crimes, doing so with intent to (1) delay, or prevent Plaintiff (Brent Oster's) testimony in the ongoing divorce proceeding, in Federal proceedings, and (2)cause him to — (A) withhold testimony, and to (3)hinder, delay, or prevent the communication of their crimes to a law enforcement officer (FBI about Federal crimes and the Racketeering activity) or judge for a Federal civil case.

159. In 2020, Plaintiff was finally able to file two Federal Civil Cases (3:20-CV-01125-JD, 5:20-cv-07828-NC) and to make reports to the FBI in San Francisco citing these civil cases as evidence. He is only now filing this RICO complaint. It took this long because his life has been completely disrupted by the actions of Hector and Marilyn Moreno, and their fellow operators and conspirators in the Racketeering Enterprise (See Exhibit G — Pain and Suffering).

160. Plaintiff (Brent Oster) was well aware of the Moreno's racketeering pattern from the start, having seen it in Kathia's previous divorce (and hearing about the details for 8 years after). Plaintiff (Brent Oster) planned aggressive legal reporting and litigation from the moment he saw Hector Moreno's name on the divorce petition and DVRO on 17 Sept 2017, but his efforts to report Hector and Marilyn to Municipal, State, and Federal authorities and litigate against them in State and Federal courts were interfered and tampered with at every step by the Hector and Marilyn Moreno, and the other operators and conspirators in the Racketeering network, with vicious retaliation against Plaintiff whenever he did manage to file reports and lawsuit complaints.

161. In Exhibit G, Plaintiff Brent Oster shows how egregious their acts of interfering and tampering interfering, harassing (18 US Code § 1512), and retaliating (18 US Code § 1512) against him as a witness have been. He has been evicted from his home no less than 5 times, harassed by police and county sheriffs when in his home, had charges brought against him by false reports of crimes and him posing a danger to Plaintiff (Kathia Oster). Had to live 70% of 2017 – 2021 out of country to feel safe and has his life savings completely depleted. Plaintiff (Brent Oster) has not been dissuaded, nor intimidated, and brings this RICO action despite these vicious acts, and despite the risk of more against himself.

### STATEMENT OF FACTS – PART 1c
### HECTOR AND MARILYN MORENO
### CLAIMS ARE NOT RES ADJUDICATA
### HECTOR AND MARILYN MORENO FORFEITED IMMUNITIES

162. The claims in this complaint against the Moreno Attorneys are NOT Res Adjudicata, because in the previous State Civil Suit, 19CV356322 Brent Oster vs Moreno Family Law Firm et al., that complaint was not given due process of law, and was instead stricken prematurely based on State Anti-SLAPP CCP § 425.16, with Judge Manoukian not allowing Plaintiff's amended complaint (comprising much of the evidence against them) into the proceeding to be considered.

163. There has also been significant evidence compiled since that case concluded, regarding wrongful acts and criminal behavior against plaintiffs (and others) by the Moreno Attorneys, including violations of the Attorney

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 64

Code of Conduct, violation of State laws, and violation of Federal Laws,
especially those that fall under RICO.

164. The acts of Hector Moreno and Marilyn Moreno advising their clients to
falsify reports to police and working alongside them to commit crimes
perjury to the courts is in violation of the Attorney Code of Conduct
Chapter 3, Rules 3.1, 3.3, and 3.4, and constitute criminal acts of Perjury
under California Penal Code Section 118, and false reports of crimes under
Penal Code 148.5, and so in these acts, Hector Moreno was acting unlawfully
outside of his attorney litigation privilege, and his actions are NOT
exempted from RICO.

- Rule 3.1(a)(1) *"A lawyer shall not bring or continue an action, conduct a
  defense, assert a position in litigation, or take an appeal, without
  probable cause and for the purpose of harassing or maliciously injuring
  any person"*

- Rule 3.3(a)(1) *"A lawyer shall not knowingly make a false statement of
  fact or law to a tribunal or fail to correct a false statement of
  material fact or law previously made to the tribunal by the lawyer"*

- Rule 3.3(a)(3) *"A lawyer shall not offer evidence that the lawyer knows
  to be false… and if the lawyer comes to know of its falsity, the lawyer
  shall take reasonable remedial measures"*.

- Rule 3.3(d) In an ex parte proceeding where notice to the opposing party
  in the proceeding is not required or given and the opposing party is not
  present, a lawyer shall inform the tribunal of all material facts known

to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse to the position of the client.

- Rule 3.4(c) *"A lawyer shall not falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law"*

165. By violating the Attorney Rules of Professional Conduct (each instance annotated in the Statement of Facts), committing State and Federal Crimes, including crimes of Racketeering under 18 U.S. Code § 161 and 18 U.S. CODE § 1961 (c),(d) with a pattern of predicate crimes of Fraud (deceit, concealment, perjury, false reports of crimes),  Tampering with a Victim or Witness, Retaliation against a witness, Extortion(18 U.S.C. § 1951), and Money Laundering (18 U.S. CODE § 1956, 1957), the Moreno Attorneys were acting outside their professional capacity as lawyers and as such any protections they had in their professional capacity, including litigation privilege, Anti-Slapp, etc no longer apply. They are liable for their criminal and damaging actions.

166. By law, professional service providers such as accountants and attorneys are not immune from liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Courts have interpreted and applied RICO's broad prohibitions liberally, leaving professionals susceptible to criminal prosecutions and civil actions for treble damages.

a) Pub L No 91-452, 84 Stat 922, 941 (1970), codified as amended at 18 USC §§ 1961- 1968 (1988 & Supp 1992).

b) See 18 USC § 1963 (criminal penalties); 18 USC § 1964(d) (civil damages).

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 66

c) 18 USC § 1962(c).

d) 113 S Ct 1163, 1173 (1993).

e) 'The Reves Court specifically noted that its holding did not close the door on professionals' § 1962(c) liability. Id.

### STATEMENT OF FACTS – PART 2
### SANTA CLARA DISTRICT ATTORNEY OFFICE
### MICHAEL MORENO

167. During the time that Marilyn Moreno was litigating against Brent Oster, Michael Moreno, from his role as a DA prosecutor in the Santa Clara DA Family Violence Unit, was criminally conspiring with Hector and Marilyn Moreno in their roles as managers of the racketeering Enterprise – to maliciously prosecute Plaintiff with fraudulent 423(e) and 273.6(a) charges.

168. Even if Michael Moreno was only involved in a Moreno family dinner discussion about Plaintiffs' (Brent Oster or Kathia Oster), or otherwise discussed any aspect of Plaintiffs' divorce case, and/or communicated in any way with any other staff at the DA office about Plaintiffs (Brent Oster or Kathia Oster), by doing so he was conspiring and colluding with the racketeering Enterprise – even if he did not commit a predicate act" (CGC Holding Co., LLC v. Broad and Cassel, 773 F.3d 1076, 1088 (10th Cir. 2014)).

169. Governmental agents have a great deal of discretion when deciding how to exercise the powers of the government. When a government agent engages in Extortion "under color of official right," he is essentially using the governmental powers with which he has been trusted to gain personal or

illegitimate rewards. "In order to prove Hobbs Act Extortion 'under color of official right,' 'the [plaintiff / prosecutor] need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." United States v. Urban, 404 F.3d 754, 768 (3d Cir. 2005).

170. The DA Office has refused plaintiff's requests for discovery surrounding Michael Moreno's employment and especially the termination of it in Feb 2019 when Marilyn Moreno resigned from Plaintiffs' divorce. Refusing to disclose this information is in violation of Brady's Law, as this is exculpatory evidence in the criminal cases against plaintiff (Brent Oster), and withholding this evidence constitutes obstruction of justice by the DA Office.

171. The DA Office are in violation of Plaintiff (Brent Oster's) Sixth Amendment rights to face the accusations and witnesses against him, to have a speedy trial (3 years later, no trial), and his Fourteenth Amendment Rights to due process of law before being deprived of liberty or property and equal protection of the laws. The DA Office of Santa Clara is also concealing evidence, obstructing justice, and specific individuals are conspiring with the operators of the racketeering Enterprise in violation of 18 U.S.C. § 1962(d).

172. **Plaintiff (Brent Oster) is requesting that the Attorney General serve a CID on the Santa Clara DA Office according to Title 18, United States Code, Section 1968(a) to obtain the requested discovery (Exhibit J).**

173. Because of the flawed prosecution Policy of the DA Office and due to lack of oversight, they did not properly exercise prosecutorial discretion to prevent violation of Constitutional rights and stop crimes of conspiring with operators of a racketeering enterprise by Michael Moreno when prosecuting DV-related crimes, with that activity done for the benefit of the racketeering Enterprise, whether or not he was operating or managing it.

174. The accusations against plaintiff were filed as charges against plaintiff without due process of law, without probable cause, and despite exculpatory evidence, violating his Fourteenth Amendment rights, depriving him of liberty and property without due process of law. Police and the DA Office also denied plaintiff the equal protection of the laws, refusing to prosecute any of his valid and well evidenced police reports.

175. The DA Office violated plaintiff's Sixth Amendment rights because plaintiff could not get the actual police reports or any reports of the accusations against him for a full 12 months after he was charged, nor get a speedy trail, and is still waiting, 30 months after he was accused, for a trial on the criminal charges in Criminal Court and 36 months for a trial on the DV charges in Family Court.

176. While waiting for trial, plaintiff has been subjected to extensive Prosecutorial Misconduct by the DA Office, including:

a.  Not having the extensive exculpatory evidence submitted on his behalf considered in the prosecution decisions against him.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 69

b.   Not having additional exculpatory evidence that was submitted since - considered in the prosecution decision, against him.

c.   Plaintiff not being exonerated, despite the fact that clearly, the charges were no longer supported by probable cause now that admissible evidence was insufficient to support conviction beyond a reasonable doubt, and that the decision to charge was not in the interests of justice.

d.   The DA office not providing exculpatory evidence (that they refuse to release to plaintiff when asked for it), nor consider in the prosecution, which are Brady violations, a felony crime that can each result in a 3-year sentence for a prosecutor.

e.   The DA Prosecution showed selective prosecution in not prosecuting any of the police reports that the plaintiff submitted, even with strongly evidenced claims of crimes that he reported that were committed against him including battery, fraud, perjury, and Extortion.

f.   The DA Office are also in violation of 42 U.S. Code § 12132 – Discrimination, because many of the statements made about Plaintiff, Brent Oster in the deceitful police reports by the Moreno Attorneys and their client were used to discriminate against him because he is Bipolar. The deceitful statements misconstrued him being bipolar to mean he was dangerous and was trying to find his spouse to kill her – which was completely false, and not supported by any evidence. The DA Office and Police acted on these deceitful statements, despite all exculpatory evidence showing they were false - discriminating against Plaintiff, Brent

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 70

Oster just because he was Bipolar. Brent was in Honduras, living with his new fiancée all of 2018-2019.

g.   The DA Prosecution engaged in coercive plea bargaining, by pressuring plaintiff in Early 2019 to accept a plea bargain or face further prosecution for additional RO violations and/or a long delay in waiting for trial.

h.   The DA Prosecution also did not drop the charges when the criminal courts became incapable of giving Plaintiff a speedy trial due to the COVID measures delaying hearings and trials, in violation of his SIXTH Amendment rights.

177. These wrongful acts need investigation by FBI/DOJ, as the Santa Clara County DA Office did not officially investigate Michael Moreno's involvement and did not take any official remedial action. Plaintiff has requested all information about disciplinary action vs Michael Moreno in Sept 2018 - Mar 2019 from the DA office but was refused this information, on multiple occasions.

178. This is important exculpatory evidence in the criminal cases vs Plaintiff – evidence that is being concealed by the DA Office - which is a serious Brady Violation, as well as concealing evidence from being discovered in the previous civil lawsuit vs the County and DA (3:20-CV-01125-JD, 5:20-CV-07828-NC), and in this action.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 71

179. **Plaintiff (Brent Oster) asks the US Attorney General to serve notice on the Santa Clara DA Office that this discovery be produced via RICO's CID Provisions, Title 18, United States Code, Section 1968(a).**

180. By NOT giving plaintiff a speedy trial (30 months later, still no trial), and not exercising prosecutorial discretion and not dropping the charges against him when COVID and other events meant they could not facilitate a speedy trial, the Santa Clara County DA prosecution is acting with deliberate indifference in violation of plaintiff's Sixth Amendment rights.

181. By so doing, the DA Office is also dissuading plaintiff (Brent Oster from testifying and litigating against the operators of the racketeering Enterprise (with  which some of their past and possibly present employees are conspirators), claiming their prosecutorial immunity protects them (and by proxy the individuals operating the Enterprise) from such claims – unless plaintiff (Brent Oster) has a trial and is exonerated, which they are withholding from him.

182. These criminal charges (and the DVRO) against Plaintiff (Brent Oster) have caused damages being on plaintiff's public record as they have greatly impeded his efforts to find funding for his company and to find employment as a Senior Engineer, as background checks are necessary for both. Threat of constant police action and/or being evicted from his house and having to live out of country has also impeded his efforts to gain an income, leading directly to damages for past and future lost wages and reduced earning capacity in the future.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 72

183. And all these actions by the racketeering Enterprise consisting of these Defendant persons in this action, and the agents acting under the color of law that conspired with them and brought harm to Plaintiff, Brent Oster - also left his ex-wife Kathia financially broke, with no spousal support, because plaintiff could not come back to the US and work and earn money and help her financially. Four lives were impacted and one of those lives lost - just for profit in a criminal racketeering Enterprise by the unethical Moreno Attorneys and their conspirators committing crimes under Federal and California Law and in violation of both Plaintiff's constitutional rights.

CLAIMS AGAINST SANTA CLARA DA
AND MICHAEL MORENO ARE RELEVANT

184. The claims in this lawsuit vs the County of Santa Clara and the Santa Clara DA Office are NOT Res Adjudicata, as in the previous Federal Civil Suit, (20-CV-01125-JD Brent Oster vs Santa Clara District Attorney et al), as the county has not produced any evidence exonerating Michael Moreno from malicious prosecution of plaintiff, and from acting outside his role as a prosecutor in the family violence unit, despite Plaintiff's evidence that Michael Moreno was involved unlawfully in his prosecution and the prosecution of other Moreno Law Firm opponents. **Plaintiff is requesting that the Attorney General serve a CID on the Santa Clara DA Office according Title 18, United States Code, Section 1968(a) to obtain the requested discovery (Exhibit K).**

185. The DA Office and South County criminal court refuse to give plaintiff a trial in his criminal matters, a full 3 years after charges were filed

against him, and by so acting, continue to violate plaintiff's 6th Amendment rights and by doing so obstruct, dissuade, and intimidate him in his ability to litigate in this complaint by claiming "he must resolve the criminal charges first" before prosecuting any claims based on the criminal matters, including the actions of others that leveraged those charges for Extortion in the divorce, and Interfering with a Witness in these Federal Cases.

186. The DA Office and individuals working at it are obstructing justice and interfering with Plaintiff from litigating against the racketeering Enterprise and by doing so conspiring with the Enterprise to violate RICO - by adopting the goal of furthering the Enterprise, "even if the conspirator does not commit a predicate act" (CGC Holding Co., LLC v. Broad and Cassel, 773 F.3d 1076, 1088 (10th Cir. 2014)). The county and DA are obstructing justice by preventing plaintiff from bringing this (and other) actions to keep plaintiff from recovering damages against them, and from the operators of the racketeering Enterprise, effectively giving the unlawful Enterprise protection.

**STATEMENT OF FACTS – PART 3**

**JUDGE JULIE EMEDE**

187. When the Moreno Attorneys, and the Defendant persons conspiring with them in the racketeering Enterprise instigated malicious prosecution efforts against Plaintiff (Exhibit A, Exhibit A-H-A), he left the country in Sept 2018 for his own safety to go live with his fiancée in Honduras. Once he did this, he could not safely come back to the USA to appear at his Family Court hearings because the Moreno Attorneys and the Enterprise defendants kept

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 74

filing and prosecuting charges against him, in Sept 2018, Oct 2018, and Feb 2019, with excessive bail he could not afford, especially if he had come back to the US and kept getting re-arrested.

188. This caused him to be physically unable to attend several hearings in Family court and because of this, orders and stipulations were made in his abscense. It was the only choice he had because the deceitful claims of the Moreno Attorneys that falsely made him out to be mentally ill, dangerous, armed and coming to harm or kill his ex-wife, and because of police and the DA maliciously prosecuting Plaintiff based on this (somewhat obvious) deceit. plaintiff could have been harmed or killed by the use of excessive force by police. He was safe in Honduras with his fiancée the whole time, Sept 2018 to March 2019, starting a new life and working on his startup company, and he was not a threat to anyone.

189. From the Evidence vs the Moreno Attorneys (Exhibit A-I): On 17 Sept 2018, Kathia Oster, and Shelly O'Brien (Moreno Family Law Firm) attended a status hearing in the Family Justice Center and asked for a prove-up to make the DVRO against Plaintiff permanent without his presence or input (Exhibit G), as they deliberately excluded him from the hearing by getting two charges and an arrest warrant issued the week before.

190. In the full transcript of the hearing (Exhibit A-I) we can see that there were only 8 statements by Judge Emede and Kathia Oster and her counsel from the moment when Katia Oster was sworn in, till Judge Julie Emede was ready to grant a permanent restraining order against Plaintiff, with zero evidence submitted (Exhibit A-J). This was in blatant violation of plaintiff Brent Oster's 14th amendment rights and an act of tampering with and

retaliating against a witness by Judge Emede, acting in collusion with the operators of the Enterprise, outside of her official Judicial duties. She failed to uphold the Constitution of the US, especially the 14th Amendment and Supremacy Clause in her 'judgement'.

191. That was the entirety of the due process of law in Judge Emede's Court 17 Sept 2018, to deprive Brent Oster of 5 years of liberty, $15,000 in property immediately, and a $1.3M house later, and almost cost him his life (see below). This was a staged hearing. Judge Emede was a conspirator of the racketeering Enterprise, specifically brought in to bias the outcome this hearing and rule against plaintiff (Brent Oster).

192. By making a deceitful assertion to the court in this hearing (Exhibit A-I) that Plaintiff was in possession of a firearm (to specifically maliciously prosecute him by obtaining a judge's finding that he was), and the Moreno Attorneys also making concurrent deceitful assertions to the police and DA that Plaintiff was mentally ill (discrimination), dangerous, and actively trying to find Kathia Oster and harm or kill her, the members of the racketeering were intentionally, by deceits to all parties, and malicious prosecution via them, trying to have Plaintiff aggressively arrested and perhaps killed by excessive police force by fraudulently representing his disability (bipolar) as meaning he was dangerous and going to kill Kathia. This was dissuasion and intimidation of a witness and reckless endangerment, perhaps attempted murder by their crimes of perjury and false report of a crime.

193. See Exhibit A for the abbreviated filing on wrongdoings by the Moreno Attorneys. See (Exhibits A-G, Exhibit B-B, Exhibit B-C, Exhibit B-D) for the

abridged version of the Complaint about Judge Julie Emede to the Commission for Judicial Performance.

194. At a Dec 5th hearing on that motion to set-aside Judge Julie Emede refused to set aside her decisions in the 17 Sept 2018 hearing (Exhibit A-K), and confirmed her original decision, in full knowledge that in the 17 Sept hearing, Plaintiff did not have due process of law (14th Amendment violation), did not have a fair and speedy trial in the DVRO (6th Amendment), did not get to face the accusations against him, and he did not have assistance of counsel, and thereby his Second, Sixth, Eighth, and Fourteenth Amendment rights had been violated with deliberate indifference on 17 Sept 2018 by her actions in that DVRO hearing, and now she was violating those rights for a second time by refusing to set her order aside, confirming she was violating plaintiff's constitutional rights with deliberate indifference, and conspiring with the operators of the Enterprise by adopting the goal of furthering the Enterprise, "even if the conspirator does not commit a predicate act" (CGC Holding Co., LLC v. Broad and Cassel, 773 F.3d 1076, 1088 (10th Cir. 2014))

195. Judge Emede violated 42 USC § 12132 by discriminating against Brent's disability in the decisions where she showed deliberate indifference to that disability, made judgements based on claims that Plaintiff was dangerous just because he was bipolar, and ignored his rights as a disabled person, and made judgements without Brent having any input nor evidence presented.

196. This incident, and Judge Julie Emede need to be investigated by the FBI / DOJ because of her conspiracy with the operators of the Racketeering

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 77

1  Enterprise, and her deliberate indifference in violating plaintiff's

2  Fourteenth Amendment rights and rights under 42 USC § 12132.

3

4

5  **STATEMENT OF FACTS – PART 4**

6  **GOMEZ EDWARDS**

7

8  197. Gomez-Edwards Law Group were the "Hired Guns", brought in when Marilyn

9  Moreno left the case in March 2019 – brought in to finish the dirty work for

10  her and get the Gilroy home sold. Natalie Gomez and Lauren Edwards,

11  comprising Gomez-Edwards Law Group represented Kathia Oster from April 2019

12  onwards, conspiring with Marilyn Moreno acting on behalf of the racketeering

13  enterprise to complete the forced sale of the Gilroy home according to the

14  fraudulent orders obtained by the Moreno's Fraud and Extortion in Nov 2018

15  and Jan 2019.

16

17  198. Gomez-Edwards were informed of the Moreno Law Firms wrongdoing by

18  Plaintiff (Brent Oster) in writing, multiple times, from April 2019 onward,

19  and the specifics were communicated to them multiple times, including giving

20  them a copy of the lawsuit against Hector and Marilyn Moreno (19CV356322

21  Brent Oster vs The Law Firms of Hector and Marilyn Moreno). This lawsuit was

22  filed in Santa Clara County Court in Oct 2019, and a Set-Aside motion was

23  filed in Family Court in Nov 2019 against the Forced Sale Order on the

24  Gilroy Home, with the lawsuit included as evidence of Fraud (Perjury, False

25  Reports of Crimes), Duress, and Extortion in the making of that order.

26

27  199.  Gomez-Edwards should have ceased and desisted in any efforts to sell

28  the home and waited for the set-aside to be heard and decided in Family

court. Instead, they ignored the evidence that there were criminal acts committed by the Moreno attorneys (that put plaintiff in fear, under duress, and by which the property was Extorted from him). They even told Plaintiff (Brent Oster) "they did not want to hear anything more about Moreno", and knowingly proceeded to try and enforce the forced sale order working with Temp Real-Estate 'Judge' Sharon Roper outside of the main court, even while Plaintiff (Brent Oster) had filed set-aside, reconsider, and vacate orders against those stipulations and orders, scheduled for hearings on 30 Jan 2020 , then 23 June 2020 (Exhibit B-Z). By not ceasing and desisting in their efforts to sell Plaintiff's house while the orders were being contested based on criminal activity by Hector and Marilyn Moreno, Gomez Edwards were working in conspiracy with the Moreno Attorneys to further the goals of the operators of the racketeering Enterprise, toa degree that they become operators and beneficiaries of the Enterprise by doing so.

200. Gomez - Edwards committed additional crimes (Exhibits B-J, Exhibit B-K, Exhibit B-L, Exhibit B-R) of Perjury to the court, deceit, bank fraud to Wells Fargo Bank and false reports to the authorities to bring malicious prosecution against plaintiff and to put him under duress, keep him from litigating and keep him in constant fear of losing his home.

201.  Gomez-Edwards used intimidation, threats, and corruptly persuaded Plaintiff (Kathia Oster) to engage in misleading conduct toward the Santa Clara Family Court by falsifying statements in filings, and by filing false reports of a crimes - and by doing so,(1) delay, or prevent his testimony in this Official Federal Proceeding, as well as the ongoing official State divorce proceeding, and (2)cause him to — (A) withhold testimony, and to

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 79

(3)hinder, delay, or prevent the communication to a federal law enforcement officer or judge.

202. These actions were a violation of Interference or Tampering with a Victim or Witness (18 U.S. CODE § 1512), and Retaliation against a Witness (18 U.S. CODE § 1513) to prevent plaintiff from appearing in State and Federal Proceedings (3:20-CV-01125-JD Brent Oster vs Santa Clara County et al), and to interfere with him reporting the crimes by the operators of the racketeering Enterprise to a Federal Authority (FBI). Gomez Edwards were conspiring with other operators of the Enterprise who were defendants or had claims against them in Plaintiff's Federal official federal proceedings and in his FBI reporting. Plaintiff was unable to effectively litigate in 3:20-CV-01125-JD, missed several deadlines, and could not seek attorney assistance to compose better filings in that official federal proceeding because of Gomez-Edwards interference, tampering, and constant harassment of him as a witness, trying to get him evicted from his home with wrongful orders and Extorting all his income from him.

203. Gomez Edwards called for Mandatory Settlement Conferences in the Family Justice Center frequently, and demanded Temp 'Judge' Roper order the sale his home, putting him in fear - then committing crimes of Extortion to get him to sign ever worsening stipulations, increasing a lump sum payment from $364,000 to $500,000 to Kathia Oster to buy her out of the house (equaling the entire equity left in the house) and monthly payments to them and plaintiff (Kathia Oster) to $10,000 and then $25,000 (when Brent only had income of $8000 a month). Plaintiff Brent Oster was in fear that he would be evicted from his home if he did not agree to their terms.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 80

204. This was Extortion (18 U.S. CODE § 1951) (b)the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened fear. If plaintiff did not agree to Gomez-Edwards terms, he would be forced out of his house by Temp Real-Estate Judge Roper, even though he was lawfully contesting the forced sale of his house in Family court.

205. On 28 Aug 2019, GOMEZ helped Plaintiff (Kathia Oster) compile a **report of all Gomez-Edwards (attorney-attorney) communications with Plaintiff (Brent Oster)** for her to take as false reports of crimes directly into to a criminal hearing on previously the raised matters against Plaintiff (Brent Oster) in Morgan Hill Criminal Court.

206. In this fraudulent filing, in addition to all the attorney-attorney communications, Gomez, Edwards, and Plaintiff (Kathia Oster) falsely claimed DVRO violations consisting of: a simply written offer of settlement on the DV issues (to accompany the formal legal one sent to them, to give to Plaintiff (Kathia Oster)) and footnotes on $10,000 VOLUNTARY checks that were given to Plaintiff (Kathia Oster)'s prior counsel (in front of a judge, in court),  to give to Plaintiff (Kathia Oster). These were acts of good faith, legal, and done in a completely innocuous, non-threatening, honest, and heart-felt gesture on his part, now that tensions were lower, and Plaintiff (Brent Oster) even reported to police that he put a note on a check 26 March 2019, and added the above.

207. Still Gomez Edwards mis-construed this act as threatening and submitted it to the DA prosecutor on Plaintiff (Brent Oster)'s criminal case as false reports DVRO violations to try and dissuade and intimidate him.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 81

208. This was a crime of making false reports to police, with the motive to bring malicious prosecution against plaintiff to interfere and tamper with him testifying in both the divorce proceeding, and the Official Federal Proceeding (3:20-CV-01125-JD), conspiring with operators of the Enterprise that had claims against them in that lawsuit, to interfere with his income, and further Extort funds and property from him. (See Exhibit B-J, and B-K for full State Bar Reports, B-L For reports to San Jose PD).

209. Gomez & Edwards used intimidation, threats, and corruptly persuaded Plaintiff (Kathia Oster) to engage in misleading conduct toward the Morgan Hill Criminal Court and the District Attorney by falsifying statements in filings, and by filing false reports of a crimes - and by doing so,(1) delay, or prevent his testimony in the ongoing criminal proceeding AND in the ongoing divorce proceeding, and (2)cause him to — (A) withhold testimony, and to (3)hinder, delay, or prevent the communication to a law enforcement officer or judge.

210. These actions were a violation of Interference or Tampering with a Victim or Witness (18 U.S. CODE § 1512), and Retaliation against a Witness (18 U.S. CODE § 1513) to prevent plaintiff from appearing in State and Federal Proceedings (3:20-CV-01125-JD), and to interfere with him reporting the crimes by the operators of the racketeering Enterprise to a Federal Authority (FBI). Gomez Edwards were conspiring with other operators of the Enterprise who were defendants or had claims against them in Plaintiff's Federal official federal proceedings and in his FBI reporting.

211. Gomez Edwards committed Bank Fraud, obtaining control over Plaintiff (Brent Oster's) Wells Fargo Mortgage account by means of false or fraudulent

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 82

pretenses, representations, or promises, and instructing individuals (Nancy Lee) at Wells Fargo to take actions on Plaintiff's sole property account without his knowledge nor consent (Exhibit B-R, Brent Oster Criminal Report to San Jose PD, 8 Jan 2020).

212. From Dec 2019 through Jan 2020, Nancy Lee, counsel for Wells Fargo was contacted by Gomez Edwards and corresponded only with them, discussing matters regarding a foreclosure sale for the property at 1940 Saffron Court in Gilroy, CA. Not once did Gomez Edwards inform Brent of this communication nor introduce him to Nancy, nor inform him of any of their actions, despite the fact that only Brent's name is on the mortgage (their client's is not), and Brent is 50% owner on the title to the home.

213. Gomez Edwards were intentionally concealing from Brent their communications and efforts with Wells Fargo because they were trying to fraudulently force a sale of his house by making perjured statements to a judge stating that if the Judge did not list the house and sell it right away, it would go into foreclosure and be sold by the bank. They said this despite being informed in writing a dozen times between Nov 22 and Jan 30 that Brent was working on a foreclosure effort with an experienced legal team and had filed a complaint and TRO in civil court (19CV360805 Brent Oster vs Wells Fargo Bank, N.A. et al), with Brent providing extensive documentation of that proceeding to them. This was a crime of perjury to the court, concealing evidence, deceit, fraud, and bank fraud, reported to San Jose PD under case# 20-035-9713.

214. This was a violation of 18 U.S. Code § 1344 - Bank fraud (Exhibit B-R, Brent Oster Criminal Report to San Jose PD, 8 Jan 2020, Police Report case# 20-035-9713).

215. Plaintiff, Brent Oster, filed a motion (Exhibit B-H) in Family Court in Nov 2019 to set-aside the Nov 2018 forced sale and Jan 2019 settlement stipulations (that were acquired by Extortion by fear by the Moreno Family Law Firm), he fully evidenced them with 8 Memorandums of Points and Authorities submitted from Feb 2020 to Jun 2020, including 4 full lawsuits with complaints and evidence that he had filed:

   a. Evidence for Set-Aside Motion Hearing

     - Sole Property Documentation for ownership of Gilroy House

   b. Evidence for Set-Aside Motion Hearing

     - Complaint vs Moreno Law Firms (Case # 19CV356322)

   c. Evidence for Set-Aside Motion Hearing

     - Complaint vs Santa Clara DA (42 USC 1983 #20CV01125JD)

   d. Evidence for 11 Mar 2020 Ex-Parte Hearing

     - Lawsuit filing vs Gomez Edwards (Case # 20CV361372)

   e. Evidence for DVRO Trial

     - Civil Complaint vs Kathia Oster (Case # 20CV366435)

   f. Evidence for DVRO Trial

     - Rebuttal to Kathia Police Reports

   g. Evidence for DVRO Trial

     - Brent Oster Testimony from Jan 2019

   h. Evidence for DVRO Trial

     - Lawsuit Filing vs Gomez Edwards (Case # 20CV361372)

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 84

216. There was overwhelming evidence in these Memorandums and Plaintiff's main filings that there was deceit, concealment, malicious prosecution, fraud, Extortion by fear, and other misconduct and crimes during the proceeding, particularly around the hearings where the orders/stipulations for the forced sale and settlement of assets were created. Plaintiff demonstrated that his Constitutional Rights were violated by the actions of the DA and the Family Court Judges in the making of these forced sale and settlement stipulations in Nov 2018, Jan 2019. He also demonstrated he was well within his rights, to ask for a set-aside / relief from judgement according to Family Code, Division 6: Relief From Judgment [2120 - 2129] and met all the criteria. (Exhibit B-J, Exhibit B-K, Exhibit B-L, Exhibit B-R). Gomez Edwards filed perjured statements about Plaintiff (Brent Oster), making claims he was abusing Plaintiff (Kathia Oster) by not selling the home, by demanding a DVRO Trial, and that the home was in danger of imminent sale by the bank, and other deceits, perjury, fraud on the court.

217. Despite plaintiff having followed due process, and having abundant supporting evidence, Judge Thomas Kuhnle denied his request for Set-Aside after a short hearing (Exhibit B-T), DESPITE the fact that in plaintiff's filings, there were 118 instances of the word 'Extortion', 1617 instances of the word 'fraud', 260 instances of the word 'perjury', and 358 instances of the word 'crime', and a dozen of exhibits of evidence for each criminal act.

218. Judge Kuhnle showed deliberate indifference to plaintiff's Fourth, Eighth, and Fourteenth Amendment rights, by his refusal to set aside these fraudulent orders despite very clearly evidenced criminal wrongdoing by the Moreno Attorneys and the other conspirators and operators of their racketeering Enterprise in obtaining them.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 85

219. Plaintiff filed a motion to Reconsider (Exhibit B-U) and an Ex-Parte Motion to Reconsider that Judgement to Set Aside by Judge Kuhnle, but just after he did so, plaintiff was forced from the Gilroy home by Temp Real-Estate Judge Sharon Roper, who was acting independently and of her own volition, outside of the process happening in the main family court, threatening to evict him from his home starting in Early Feb 2020,  then by issuing an order in March 2020 (B-X) to have Rick Trevino, the realtor, re-key plaintiff's house and prevent plaintiff from re-entering it. Plaintiff contested this order (Exhibit B-Y) and reported this misconduct by Judge Roper to the Commission on Judicial Performance.

220. Despite there being a set-aside motion (of the forced sale) in litigation from Nov 2019 to 30 Jan 2020, and then a re-consider motion in litigation from then till 23 June 2020, with the filings specifying the crimes of the operators of the racketeering Enterprise in great detail, Gomez-Edwards completely ignored the motion to set-aside, the motion to reconsider, went outside the due process in the court, and repeatedly (Exbibit B) requested that Temp Real Estate Judge Roper issue orders to force the sale of the home, and force plaintiff (Brent Oster) out of it, making use of perjury, threats, and putting plaintiff at risk of being homeless during the COVID-19 pandemic in the process.

221. These actions were a violation of Interference or Tampering with a Victim or Witness (18 U.S. CODE § 1512), and Retaliation against a Witness (18 U.S. CODE § 1513) to prevent plaintiff from appearing in State and Federal Proceedings (3:20-CV-01125-JD Brent Oster vs Santa Clara County et al), and to interfere with him reporting these crimes to a Federal Authority

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 86

(FBI). This was done in conspiracy with other operators of the Enterprise who were defendants or had claims against them in Plaintiff's Federal filings and reporting.

222. This was Extortion (18 U.S. CODE § 1951) (b)the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened fear. In this case, the fear of being left homeless and broke, in California, and unable to travel due to the COVID pandemic – real, mortal, fear of death. These are the conditions under which Plaintiff (Brent Oster) was Extorted to leave his home in Feb 2020 and surrender it to the operators of the racketeering enterprise, unable to sustain litigation any longer once displaced.

**STATEMENT OF FACTS PART 5**

**TEMP JUDGE ROPER**

223. Temp Judge Roper was nominally someone who was assigned to be a "judge pro tem", (someone who has been a lawyer for at least 10 years and is trained to hear and decide small claims cases). She was to oversee the sale of the Gilroy Home, and to hold hearings on any of the Respondent and Petitioner's changes that were requested, but actually had very limited legal authority to make decisions and issue orders. Instead of acting in the pro tem role to arbitrate, and deferring to the main court for decisions, she was acting in a biased manner acting far outside her authority solely for the benefit of the operators of the Enterprise to enforce the sale of the property and interfere and tamper with Plaintiff (Brent Oster) from lawfully litigating to stop that sale.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 87

224. Despite the fact that she was not authorized to, Temp Judge Roper constantly and maliciously interfered with, tampered with, and retaliated against Plaintiff's lawful efforts to litigate to set aside the forced sale against his home. Plaintiff filed a Set-Aside motion in Nov 2019, but instead of standing down all efforts to sell the home or forcing him out of his home as she should have, Temp Judge Sharon Roper issued a series of ex-parte orders outside the main process of the Family Court to evict plaintiff and authorize the realtor to enter, stage and sell the house (Exhibit B-M, Exhibit B-N, Exhibit B-V, Exhibit B-X, Exhibit B-AG) in Dec 2019, Mar 2020, June 2020, and Aug 2020.

225. She finally succeeded in early 2020, starting with threats to do so in Feb, leading up to her issuing an order in March to have his home re-keyed (Exhibit B-V, Exhibit B-W) and him restrained from it without any due process.

226. A trial on the asset settlement, set-aside of the forced sale of the home, and DV claims was scheduled on-calendar June 2020 that she desperately wanted to prevent happening, conspiring with Marilyn and Hector Moreno and the other operators to the Enterprise to conceal the evidence (of the criminal perjury, false reporting of crimes, fraud, interference / tampering of witnesses, and Extortion by the Moreno attorneys and other operators of the racketeering Enterprise). Likely, she was also concealing evidence of her past crimes with them as well.

227. Temp Judge Roper showed deliberate indifference in violating the Constitutional Rights of plaintiff, knowing that the original forced sale order for the home was based on crimes/torts of deceit, concealment,

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 88

Perjury, False Reports of a Crime, Dissuasion, Extortion and fraud by the Moreno (Exhibit A) and Gomez-Edwards Attorneys (Exhibits B-J, Exhibit B-K, Exhibit B-L, Exhibit B-R) and other operators of the racketeering Enterprise, and knowing that the sale itself would only benefit the Enterprise, and leave both Brent and Kathia with no money (Exhibit A-I). she made orders outside of her legal authority, contradicting the due process of law that was supposed to be happening in the main court.

228. Judge Kuhnle and Judge Roper had many reasonable opportunities to intervene and simply refused to do so, willfully failing to keep both Plaintiffs from harm. Temp Judge Roper's insistence that the court proceed with the sale regardless of consequences or legality, throwing all due process of law aside, throwing the safety and well-being of both Plaintiffs aside, was deliberate indifference in violating plaintiffs' Fourth, Sixth, Eighth, and Fourteenth Amendment rights, and by doing so she willfully allowed them to both come to great harm (Exhibit G -- Pain and Suffering).

229. Temp Judge Sharon Roper violated Judicial Code Of Ethics, California Court Code Procedures, State Law, and Plaintiff's Fourteenth Amendment Rights by unilaterally making orders (Exhibit B-M, Exhibit B-N, Exhibit B-V, Exhibit B-X, Exhibit B-AG) in Dec 2019, Mar 2020, June 2020, and Aug 2020, on her own volition, with no justification from the Family Court, nor communication from Judge Kuhnle, based only on ex-parte communications with the Moreno Attorneys and Gomez-Edwards.

230. Judge Roper's orders contradicted the main court's orders, and violated the ongoing process of law which was awaiting trial / hearing on 30 Jan 2020, 10 Mar 2020, 04 May 2020, and finally 23 June 2020, with her orders

instead serving the persons operating the racketeering Enterprise by attempting to liquidate the home ASAP for their mutual profit, before the forced sale could be set-aside, and to dissuade and intimidate Plaintiff (Brent Oster) from litigating in the Family Court matter, and in the multiple state civil lawsuits he was now litigating against the persons operating the racketeering Enterprise, and obstruction of his efforts to bring prosecution against them.

231. Temp Judge Roper's actions to issue forced sale and eviction orders on 24 Dec 2019, 2 Mar 2020, 28 Aug 2020, 13 Oct 2020, and 19 Oct 2020 were each a violation of 18 U.S. CODE § 1512 in that she (c) corruptly (acting outside her official capacity as a pro tem (Temp Real Estate) Judge (1) prevented Plaintiff from accessing any of his paper records and evidence by evicting him from his home in Feb, then, conspiring with Rick Trevino and Intero Real Estate, had all such records and evidence removed from his house and stored at Extra Space Storage in Gilroy, CA - by having Rick Trevino forge Plaintiff's signature on a storage contract (by her order), that would cost around $500 a month, without informing plaintiff. Plaintiff has been unable to afford the storage fees, so 7 July 2021 an auction was held to dispose of all of Plaintiffs belongings – thereby altering, destroying, or concealing records, documents, or other objects with the intent to impair their availability for use in an official proceeding. These records, documents, and objects included:

a. All documents from Plaintiff's purchase of the Gilroy Home from DeNova in 2015.

b. All bank records from the mortgage with Wells Fargo.

c. All paper records sent to Plaintiff by Wells Fargo and their agents regarding foreclosure.

d. Printed versions of all Plaintiff's reporting to State Bar of California about Hector Moreno, Marilyn Moreno, Gomez-Edwards, and their employees.

e. All paper mail responses sent to Plaintiff by State Bar of California

f. Paper copies of Plaintiff's reports to the Commission on Judicial Performance.

g. All paper mail responses from CJP.

h. Plaintiff's reports to the California Dept of Real-Estate and their mail responses.

i. Paper copies of all Plaintiff's filings and litigation in the following cases:

- **5:20-cv-07828-NC Brent Oster et al v. State of California et al.**
- **3:20-CV-01125-JD Brent Oster vs Santa Clara District Attorney et al.**
- 19CV356322 Brent Oster vs Moreno Family Law Firm et al
- 20CV361372 Brent Oster vs Gomez Edwards law group LLP
- 19CV361036 Brent Oster vs Intero Realty / BRK
- 19CV360805 Brent Oster vs Wells Fargo Bank, N.A. et al
- 20CV366930 Brent Oster vs City of Sunnyvale and Santander Consumer USA
- 17FL003843 Kathia Oster vs Brent Oster (divorce)

j. Paper copies of Plaintiff's reports to Gilroy PD, San Jose PD, and the Office of Jeff Rosen

k. Paper printouts of all Plaintiff's reporting to the FBI

l. Several Hard Disk Drives and Solid State Drives with digital records of some of these files and other information.

232. By evicting Plaintiff from his home, she also (2) otherwise obstructed, influenced, or impeded Plaintiff from participating in the official divorce proceeding, and (d) She hindered, delayed, prevented, and dissuaded Plaintiff (now homeless) from (1)attending or testifying in an official

proceeding (2)reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense (3)arresting or seeking the arrest of another person in connection with a Federal offense.

233. Again, Judge Roper committed these criminal acts by acting outside her official duties, filing unlawful eviction orders against plaintiff, and unlawful sale orders on the house, despite the fact that lawful hearings were scheduled to decide on a Set-Aside Motion on 30 Jan 2020, and then on 20 June 2020 of the underlying order, which would render it void. There should have been ZERO attempts to sell the house, and ZERO attempts to force Plaintiff (Brent Oster) from it while he was supposed to be attending and testifying in the divorce proceeding in Family Court.

234. All of Judge Roper's sudden ex-parte orders for the sale of plaintiff's house or for evicting him from it, done outside of due process, came within days of litigation or reports against Marilyn Moreno in the lawsuit proceeding (19CV356322 Brent Oster vs Moreno Family Law Firm et al) or in the Federal Lawsuit (3:20-CV-01125-JD Brent Oster vs Santa Clara County et al), against Hector Marilyn, and Michael Moreno by Plaintiff. There is little doubt Judge Roper was having ex-parte communications with Marilyn Moreno or other members of the racketeering Enterprise during the proceeding. She was taking actions outside of her judicial duties to aid and abet the racketeering Enterprise by unlawfully forcing the sale of the Gilroy Home by making her own orders, outside the authority of the Family Court. Judge Roper also committed crimes of Tampering with a Victim or Witness (18 U.S. CODE § 1512), Retaliation against a Witness(18 U.S. CODE § 1513) to prevent plaintiff from appearing in State and Federal Proceeding

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 92

(3:20-CV-01125-JD Brent Oster vs Santa Clara County et al), and from reporting these crimes to a Federal Authority (FBI) - by having him evicted and unable to litigate in either of them or do any reporting. Plaintiff struggled to litigate in 3:20-CV-01125-JD, and was only able to make online reports to the FBI via their tips web portal in 2018-2020. It was not until 2021 he was able to compile and send more comprehensive reports to the FBI based on civil case #5:20-cv-07828-NC Brent Oster et al v. State of California et al as evidence.

235. Temp Judge Sharon Roper was clearly acting in conspiracy 1962(d) with Marilyn Moreno and the other operators/managers of the Enterprise to complete the predicate crimes of Extortion (18 U.S. CODE § 1951) and Money Laundering (18 U.S. CODE § 1956), even giving precise instructions about the parties that would have authority over property, the sale, and the holding of said monies, and distribution of proceeds. She disposed of all of Plaintiffs belongings - thereby altering, destroying, or concealing records, documents, or other objects with the intent to impair their availability for use in an official proceeding, and protect the Moreno Attorneys and the other operators of the racketeering enterprise from civil and criminal liability.

236. Temp Judge Sharon Roper once had plaintiff stay back after a mandatory settlement conference in plaintiff's divorce in Oct 2019, where the topics of his ex-wife dropping the DVRO and the topic of settling the assets by selling his house were discussed. After the others left, Judge Roper told plaintiff (multiple times), that if he just settled the assets, then the DV accusations would clear up more quickly. It was clear that she was

communicating a threat of Extortion on behalf of the defendant's racketeering Enterprise.

237. The FBI / DOJ need to investigate this, and Plaintiff (Brent Oster) asks the Attorney General to obtain discovery according to the RICO CIP clause 1968 (a). They need to obtain these ex-parte communications in the 2-4 days preceding each of Judge Roper's spontaneous orders to sell the home or evict plaintiff on (24 Dec 2019, 2 Mar 2020, 28 Aug 2020, 13 Oct 2020, 19 Oct 2020). There will be clear evidence of them conspiring to commit fraud, Extortion, and dissuading and intimidating a witness.

238. The Santa Clara Family Justice Center, Judge Kuhnle, and Temp Judge Roper, acting with deliberate indifference violated the Supremacy Clause (Article VI, Clause 2) in that they were are not abiding by the Constitution, nor Federal Law in their decision making and judgements from Nov 2019 – Present in the divorce proceeding, and the decisions they made where not lawful.


**STATEMENT OF FACTS – PART 6**

**INTERO REAL-ESTATE SERVICES AND RICK TREVINO**


239. Intero Real Estate Services and Rick Trevino served as the "Liquidator", the sales channel for the real-estate product stolen from the plaintiffs by the operators of the Enterprise by Extortion, and Intero did the money laundering, turning the funds obtained from the buyer (by criminal fraud) into cash through an intermediate instrument/party, then that cash was then disbursed to the operators of the Racketeering Enterprise.

240. Real Estate Rick Trevino of Intero Real Estate (supposed to be representing both Plaintiffs as sellers) sold the Gilroy house on 27 Aug 2020 as shown in (Exhibit C), (based on the court orders obtained by Fraud and Extortion by the Moreno Attorneys, and the amended stipulations obtained by Fraud and Extortion by Gomez Edwards, and issued by Temp Judge Roper), to complete the pattern of crimes by the Racketeering Enterprise and sell the home despite the unlawful process leading up to the sale, including crimes of Tampering with a Victim or Witness, Retaliation against a witness, and Extortion (18 U.S.C. § 1951) by the operators of the Enterprise.

241. Rick Trevino, representing Intero Real Estate Services, acting with full knowledge of his senior management and senior counsel committed criminal Perjury in conspiracy (18 U.S. CODE § 1961(d)) with the operators of the Enterprise to aid and abet the crimes of Extortion (18 U.S.C. § 1951), surrounding the sale.

242. The Intero Defendants (Intero Real-Estate / Berkshire Hathaway, Rick Trevino, Heather Wang, Christopher Moles, et al) all conspired(18 U.S. CODE § 1961(d)) with the operators of the racketeering Enterprise (and in some cases acted directly as operators) to commit predicate crimes of Fraud and Extortion (18 U.S.C. § 1951), Tampering with a Victim or Witness (18 U.S. CODE § 1512), Retaliation against a Witness(18 U.S. CODE § 1513) to prevent plaintiff from appearing in State and Federal Proceeding (3:20-CV-01125-JD Brent Oster vs Santa Clara County et al), and from reporting these crimes to A Federal Authority (FBI).

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 95

243. Intero even had Rick Trevino participating in all e-mail conversations in the divorce from Dec 2019 forward. It was neither legal nor appropriate to have a realtor from Intero Real Estate being involved in communication in a divorce proceeding, directly corresponding with Temp Judge Roper, Judge Kuhnle, the Plaintiffs, and their counsel, where the realtor personally had a monetary interest in the outcome of the proceeding and was also representing the monetary interests of the persons operating the    . racketeering Enterprise. This should never have happened. For this reason, and others, plaintiff brought a state civil suit (Case #19CV361036) vs Intero/Berkshire Hathaway and Rick Trevino (Exhibit D), including the following State Civil Violations:

1. Intero Defendants were violation of Equal Dignities Rule, Civ. Code §1624, committing a crime of fraud by selling Plaintiff's house without any written agreement with him nor his permission.

2. Intero Defendants violated CIV 1709, 1710(3), by deceit and concealment of substantial facts, including concealing 4 lawsuits against other parties involved in the sale, that they did NOT disclose to the buyers or sellers despite a duty to do so, committing a crime of fraud.

3. Defendant Rick Trevino violated Civil Code section 1710(1) and committed a crime of Perjury, Fraud on the court, and knowingly defamed plaintiff in a deceitful statement by assertion, as a fact that On 1 Jan 2020, without providing any evidence of any kind, stating that Plaintiff *"Mr. Oster is continuing to act in an aggressive manner, as seen in the email below. Entry by any party is unsafe at the moment. I recommend Mr. Oster be removed from the home and ordered to stay away*

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACT RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 42 U.S. CODE § 1983 - 96

*from the premises as well as any Intero office"*. Rick Trevino made this deceit, asserting it as a fact, when it was not true, and, by making it to a Judge, committed a crime of Perjury, and to Police, a crime of a false report to police, when he knew these statements to be untrue and, in fact, knew plaintiff was 3300 miles away and posed zero threat.

4. Intero Defendants conspired with the other operators of the Enterprise, aided and abetted the commission of an intentional crime of fraud, theft by trick of plaintiffs house by the other defendants, as they were fully disclosed on the other parties' unlawful conduct and the lawsuits, and knew they constituted a torts of deceit and fraud, yet they gave substantial assistance and encouragement to the other parties to so act, including committing unlawful acts to do so. In so doing, the INTERO Defendants committed these crimes of fraud for the benefit of the other operators of the Enterprise, in order to unlawfully sell the home at 1940 Saffron Court, and keep the profits substantially for the operators of the Racketeering Enterprise.

244. These acts by Rick Trevino, done with full knowledge of his corporate management and corporate counsel constituted predicate crimes of (18 U.S.C. § 1512) Tampering with a Victim or Witness, and (18 U.S.C. § 1512) Retaliation against a witness, and criminal Perjury, done in conspiracy (18 U.S. CODE § 1961(d)) with the other operators of the Enterprise to aid and abet the crimes of Extortion(18 U.S.C. § 1951), to further the goals of the Enterprise to deprive Plaintiffs of property.

245. Specifically, by making a Perjured statement to a Judge and a false report of a crime about Plaintiff (Brent Oster), Rick Trevino was trying to

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 97

get Plaintiff (Brent Oster) evicted from his home, and thus Plaintiff would be unable oppose them by litigating in multiple State and Federal           . proceedings to stop them from selling the home, nor make reports to Municipal, State or Federal (FBI) authorities against the ongoing criminal racketeering actions of the Enterprise.

246. By repeatedly Interfering with Plaintiff from litigating or testifying in the official divorce proceeding, in State civil lawsuit official proceedings, as well as a Federal Official Proceeding (Lawsuit 3:20-CV-01125-JD Brent Oster vs Santa Clara County et al, and from filing lawsuit 5:20-cv-07828-NC) - Rick Trevino, and Intero Real Estate Services and their employees committed predicate crimes of Tampering with a Victim or Witness (18 U.S.C. § 1512) (b)as he knowingly used intimidation, threats, or corruptly persuaded or attempted to persuade persons, including Judge Roper and/or the Police to engage in misleading conduct toward Plaintiff (Brent Oster), with intent to — (1)influence, delay, or prevent the testimony of Plaintiff in the Federal official proceeding; or (2)cause or Plaintiff (Brent Oster) to (D)be absent from the Federal official proceeding to which he had been summoned by legal process or (3)hinder, delay, or prevent the communication to a law enforcement officer (FBI) or judge of the United States of information relating to the commission or possible commission of a Federal offense — in this case communicating crimes of Racketeering (18 U.S.C. § 1961) Extortion (18 U.S.C. § 1951) and Money Laundering (18 U.S. CODE § 1956, 1957) by the Enterprise.

247. The Enterprise operators succeeded. Plaintiff (Brent Oster) was not able to file substantial reports to the FBI could not fully report these crimes until now due to the interference and tampering with him as a witness

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 98

and harassment of him as a witness completely disrupting and upending his life (Exhibit G). He was forced to flee from his home with only 6 suitcases and his 2 cats in Feb 2020 because Judge Roper had unlawfully, in violation of plaintiff's 14th Amendment rights, acting outside her official duties, Temp issued an order for Plaintiff (Brent Oster) to be evicted from the Gilroy house and for it to be re-keyed by Rick Trevino of Intero Real Estate, and to involve police if necessary. He was never able to return to his home to organize or take his belongings out.



248. Sometime before or after the 27 Aug 2020 sale, Intero had all the belongings of Plaintiff that remained in the Gilroy Home moved into storage, without his permission, by forging his name on a contract with Extra Space

Storage of Gilroy, that cost about $500 a month, which Brent could not afford. As a result, the contract went into default and those belongings were set to be disposed of at auction as of 7 July 2021 - including:

m. All documents from Plaintiff's purchase of the Gilroy Home from DeNova in 2015.

n. All bank records from the mortgage with Wells Fargo.

o. All paper records sent to Plaintiff by Wells Fargo and their agents regarding foreclosure.

p. Printed versions of all Plaintiff's reporting to State Bar of California about Hector Moreno, Marilyn Moreno, Gomez-Edwards, and their employees.

q. All paper mail responses sent to Plaintiff by State Bar of California

r. Paper copies of Plaintiff's reports to the Commission on Judicial Performance.

s. All paper mail responses from CJP.

t. Plaintiff's reports to the California Dept of Real-Estate and their mail responses.

u. Paper copies of all Plaintiff's filings and litigation in the following cases:

- **5:20-cv-07828-NC Brent Oster et al v. State of California et al.**

- **3:20-CV-01125-JD Brent Oster vs Santa Clara District Attorney et al.**

- 19CV356322 Brent Oster vs Moreno Family Law Firm et al

- 20CV361372 Brent Oster vs Gomez Edwards law group LLP

- 19CV361036 Brent Oster vs Intero Realty / BRK

- 19CV360805 Brent Oster vs Wells Fargo Bank, N.A. et al

- 20CV366930 Brent Oster vs City of Sunnyvale and Santander Consumer USA

- 17FL003843 Kathia Oster vs Brent Oster (divorce)

v. Paper copies of Plaintiff's reports to Gilroy PD, San Jose PD, and the Office of Jeff Rosen

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 100

w. Paper printouts of all Plaintiff's reporting to the FBI

x. Several Hard Disk Drives and Solid State Drives with digital records of some of these files and other information.

249. In Feb 2020, Plaintiff was unlawfully evicted from his home by fraudulent orders (with threats of police action) generated by the combined criminal acts of Rick Trevino, Intero Real-Estate, Temp Judge Sharon Roper, Natalie Gomez, Lauren Edwards, Marilyn Moreno, Hector Moreno and their employees - who were all persons operating the Enterprise following a pattern of Racketeering in violation of 18 U.S. CODE § 1961 (RICO), as described in this complaint. Plaintiff could only take 6 suitcases and his pets and flee his home due to fear of the actions that would be taken against him by the operators of the Enterprise and their conspirators.

250. These actions that resulted in the destruction of a significant amount of records, documents, and computer drives belonging to Plaintiff (and the evidence they contained) was a violation of:

251. 18 U.S. CODE § 1512 (c)Whoever corruptly—

(1)alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2)otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

252. Intero Real Estate Services, Rick Trevino, and his superiors also participated directly in Money Laundering (18 U.S. CODE § 1956, 1957) as

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 101

operators of the Enterprise, The buyer was defrauded to convey payment to an entity and/or account managed by the operators of the racketeering Enterprise. It was fraudulent, as the house was not legally for sale, and the 4 lawsuits about the sale were not disclosed to the buyer at the time of sale. Thus, the sale was unlawful and any subsequent conveyance and/or disbursement of funds was Money Laundering (18 U.S. CODE § 1956, 1957).

253. Then the persons managing the Enterprise disbursed the funds to themselves and others according to their own decisions and calculations, without consulting the Plaintiffs (who were the owners and sellers of the house). By doing so, Intero Realty, Rick Trevino and his superiors and the other operators of the Enterprise knowingly committed the crime of Money Laundering (18 U.S. CODE § 1956, 1957): (1) engaged in a financial transaction in criminally derived property; (2) engaged in a commercial transaction which was part of a scheme to conceal criminally derived property, or to disguise the source or ownership of criminally derived property.

254. By the fact that they did this despite a civil lawsuit against them at the time, which enumerated the criminal and civil claims by plaintiff against them and against all the other operators of the Enterprise, including the Moreno attorneys, Gomez and Edwards - Rick Trevino and Intero Real Estate Services did this crime of Money Laundering knowing the source of the funds was criminally derived property.

255. Even as of 1 July 2021, Intero Real Estate Services and their counsel still refuse to provide Plaintiff (Brent Oster) with any documents regarding the financial transactions from the sale and details of to whom the funds

were dispersed to, and what intermediate instruments, parties, or agencies were involved between the buyer and the final disbursements (Exhibit C-Z).

**STATEMENT OF FACTS – PART 7**

**LEGAL BASIS FOR CLAIMS**

256. Claims in this complaint fall under RICO (18 U.S.C. § 1961) in that they arise from predicate crimes of Tampering or Interfering with a Witness (18 U.S. CODE § 1512), Retaliation against a Witness or Victim (18 U.S. CODE § 1513), Extortion (18 U.S. CODE §  1951), Money Laundering (18 U.S. CODE § 1956, 1957), Racketeering Activity (18 U.S.C. § 1962(c)), and/or Colluding and Conspiring (18 U.S.C. § 1962(d)) with the other persons operating the Enterprise – by 2 or more individuals conspiring and colluding criminally in a racketeering Enterprise that they operated and/or managed for the purpose of defrauding and extorting assets from individuals for the profit of persons operating the Enterprise (18 U.S.C. § 1962(c)), conducting a pattern of multiple such criminal acts within the past 10 years.

257. The primary damaging act by the individuals in the racketeering Enterprise was Extortion - to obtain property from Plaintiffs by fear'. Under 18 U.S.C. § 1951, the Hobbs Act defines "Extortion" as the "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right", and elevates all but the simplest acts of robbery and Extortion to the level of federal crimes. All references to "Extortion" with a capital 'E' in this complaint refer to the Federal Hobbes Act definition, and NOT the California 518 PC State definition of extortion.

258. All claims in this complaint fall within the 4-year statute of limitations under RICO as the first crime committed against Plaintiff was by Hector Moreno in Sept 2017, and all the defendant persons operating the Enterprise have committed at least one predicate act (that forms part of the pattern for which they are being prosecuted) within 4 years or less of this filing.

259. In 1987, the Supreme Court held that a four-year statute of limitations applies to all civil RICO actions. (Agency Holding Corp. v. Malley-Duff & Associates, Inc. - 483 U.S. 143, 156 (1987)), the Court concluded that a uniform federal limitations period is necessary and borrowed the limitations period from the Clayton Act (15 U.S.C. § 15(b)), the most analogous federal statute. The Court selected the Clayton Act because RICO was patterned after that statute, which also redresses injury by awarding treble damages for "injury to business or property" – (Agency Holding Corp., 483 U.S. at 150).

260. The claims of predicate acts in this 18 U.S. CODE § 1961 action are valid, as a plaintiff need not allege that the defendant has been convicted of the predicate act to bring a civil claim. (Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 488-93 (1985)).

**18 U.S. CODE § 1962(d) CONSPIRACY, AIDING AND ABETTING**

261.  A defendant can be liable without having personally committed the predicate acts, so long as the evidence is sufficient to connect the defendant to the fraudulent scheme. (Casperone v. Landmark Oil & Gas Corp., 819 F.2d 112, 115 (5th Cir. 1987)), and The Third Circuit has also applied Salinas v. United States (522 U.S. 52, 1997) to hold that Section

1962(d)extends beyond "those who have conspired personally to operate or manage a corrupt enterprise."

262. Conspiracy liability is not limited only to those who are liable for a substantive violation under Section 1962 upon successful completion of the scheme, as defendants can be held liable for conspiracy if they knowingly agree to facilitate a scheme that includes the operation or management of a RICO enterprise. (Smith, 247 F.3d at 538). the plaintiff must prove only that the "defendant participated in the conspiracy with knowledge of the essential nature of the plan." (United States v. Tillett, 763 F.2d 628, 632 (4th Cir. 1985); United States v. Elliott, 571 F.2d 880, 903-04 (5th Cir. 1978).

263. It is "not necessary 'to prove that the defendant knew all of the details of the unlawful enterprise or the number or identities of all the co-conspirators.'"(Dale v. Frankel, 131 F. Supp. 2d 852, 860 (S.D. Miss. 2001)) (quoting United States v. Posada-Rios, 158 F.3d 832, 858 (5th Cir. 1998)).

264. In Salinas(522 U.S. 52 (1997).), the Court held that "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense."9 The Court went on to state: "The interplay between subsections (c) and (d) [of RICO Section 1962] does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense."

265. The Third Circuit has applied Salinas to hold that Section 1962(d) extends beyond "those who have conspired personally to operate or manage [a]corrupt enterprise."11 It also held that conspiracy liability is not limited only to those who are liable for a substantive violation under Section 1962 upon successful completion of the scheme. The court emphasized that "one who opts into or participates in a conspiracy is liable for the acts of his [or her] coconspirators which violate [S]ection 1962(c), even if the defendant did not personally agree to do, or to conspire with respect to, any particular element.". Under this standard, defendants can be held liable for conspiracy if they knowingly agree to facilitate a scheme that includes the operation or management of a RICO enterprise. (Smith, 247 F.3d at 538).

**OFFICIAL PROCEEDINGS - Interference with and Tampering with a Witness In**

- **Dec 2020  5:20-cv-07828-NC   Brent Oster et al v. State of California et al**
- **Jan 2020  3:20-CV-01125-JD   Brent Oster vs Santa Clara County et al**
- Jan 2020  20CV361372       Brent Oster vs Gomez Edwards law group LLP
- Oct 2019  19CV356322       Brent Oster vs Moreno Family Law Firm et al
- Dec 2019 19CV361036       Brent Oster vs Intero Realty, Rick Trevino, et al
- Dec 2019 19CV360805       Brent Oster vs Wells Fargo Bank, N.A. et al
- Sep 2017 17FL003843       Kathia Oster vs Brent Oster (divorce)

266. During the course of the pattern of racketeering by the defendant perons from 2017 to present, Plaintiff (Brent Oster), has been a party in all of the official proceedings listed above, from the dates listed - as a plaintiff in all but the divorce 17FL003843, where he was a respondent.

267.   19CV356322 (Brent Oster vs Moreno Family Law Firm et al), 20CV361372 (Brent Oster vs Gomez Edwards law group LLP), and 19CV361036 (Brent Oster vs Intero Realty, Rick Trevino, et al), and 19CV360805 (Brent Oster vs Wells Fargo Bank, N.A. et al) are all California State civil proceedings citing the defendants for violating state civil law and penal codes.

268. 3:20-CV-01125-JD (Brent Oster vs Santa Clara County et al), and 5:20-cv-07828-NC (Brent Oster et al v. State of California et al) are complaints in US District Court, Northern California. 3:20 was a joinder into 5:20 when 5:20 was filed in Dec 2020. They both cite violations of constitutional rights by the defendant parties acting under the color of law, but also cite the (Non-RICO) criminal acts of Hector Moreno, Joseph Tang, Marilyn Moreno, Karl Nastrom, Shelley O'Brien, Natalie Gomez, Lauren Edwards, Rick Trevino, and Intero Realty as context for the violations of civil rights and justification for the damages caused by those violations, but the non-color-of-law parties were not directly named as defendants, nor did any of the causes of action name them or cite their actions.

269. Plaintiff is also a defendant in 3 criminal actions (F1869789, F1870472, F1900464) brought against him in Sept 2018, Oct 2018, and Feb 2019 as a result of false reports of crimes by Plaintiff (Kathia Oster), Marilyn Moreno, and Karl Nastrom, and by conspiracy with Marilyn's nephew, Michael H Moreno, who was a DA prosecutor in the Santa Clara DA family violence unit at the time) as detailed in this complaint. The criminal proceedings have still not had a trial nor resolution, and plaintiff can only afford a public defender represent him.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 107

270. Despite having to be out of country 70% of 2018-2021 Plaintiff also did reporting to Gilroy Police, San Jose Police, the Santa Clara DA, and FBI (via the online tips, and mailing in reports, as he was out of country and could not go in person) during the time that these criminal acts were being conducted against him in a pattern of racketeering.

271. From the moment that J Hector Moreno started working with Plaintiff (Kathia Oster) in late 2017 to file false police reports and a perjured DVRO against Plaintiff (Brent Oster), Hector Moreno was committing these criminal acts in a pattern of racketeering that he had practiced for years and those criminal actions by Hector Moreno against Plaintiff in 2017 have been leveraged till present by the operators of the racketeering enterprise to interfere and tamper with Plaintiff as a witness in ALL active proceedings in State and Federal Courts, and to retaliate against him for ANY and ALL reporting to municipal police, County DA, State agencies and FBI, so these instances of tampering, interfering, harassing against Plaintiff as a witness cited in the complaint are all violations of 18 US Code § 1512, and so these instances of retaliating against Plaintiff are all violations of 18 US Code § 1513 throughout this complaint.

272. Because of the combined interference, tampering, harassment and retaliation against him by the defendant parties, plaintiff is financially broke, living outside the US, with his only financial support being family, and while he is litigating this action pro-se, having his last possessions and a large amount of his evidence seized and sold off.

273. By the criminal acts of Fraud (deceit, concealment, perjury, false reports of crimes, breach of contract/stipulation), Extortion(18 U.S.C. § 1951), Tampering with a Victim or Witness, Retaliation against a witness,

and Money Laundering (18 U.S. CODE § 1956, 1957) the operators of the Racketeering Enterprise and their conspirators, consisting of the defendant persons, deprived plaintiffs' Brent Oster and Kathia Oster of $1.3M in property by Extortion, depleted Plaintiffs' retirement savings ($360,000) by their criminal acts, and cost them each 3 years of lost wages and other damages because their lives were so disrupted by the criminal acts of the operators of the enterprise acting in a racketeering pattern.

274. For decades, Hector and Marilyn Moreno have been front and center of managing a Racketeering Enterprise of staggering proportions, with a pattern of predicate crimes affecting hundreds of individuals, to deprive them of property through Extortion and other unlawful means and then Laundering it for distribution to the operators of the Enterprise. Now they have to pay.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 109

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

Predicate RICO Crimes

Extortion (18 U.S.C. § 1951)

Tampering with a Victim or Witness (18 U.S. CODE § 1512)

Retaliation against a Witness (18 U.S. CODE § 1513), and

Money Laundering (18 U.S. CODE § 1956, 1957)

1.    From 2017 to present, the defendant person operating the Enterprise and conspiring with the Enterprise committed predicate crimes of Fraud (deceit, concealment, perjury, false reports of crimes, breach of contract / stipulation), to achieve Tampering with a Victim or Witness, Retaliation against a witness, Extortion(18 U.S.C. § 1951), and Money Laundering (18 U.S. CODE § 1956, 1957) and/or conspiring and colluding (18 U.S. CODE § 1961(d)), with the other operator/managers of that racketeering Enterprise and with external parties to defraud plaintiffs of over $2M of property and assets for the financial gain of those operating the Enterprise.

2.    Hector Moreno – para 91-93, False Report to Police, Tampering with a Victim or Witness (18 U.S. CODE § 1512(b)(1,2,3), (c)(2), (d)(1,2)) in a pattern of Racketeering, 5 Sept 2017, 13 Sept 2017

3.    Hector Moreno - para 94-103, Perjury and Tampering with a Victim or Witness (18 U.S. CODE § 1512(b)(c)(d)) in a pattern of Racketeering and Retaliating against a Witness (18 U.S. CODE § 1513 (e)) in a pattern of Racketeering, 14 Sept 2017

4.    Marilyn Moreno, Karl Nastrom - para 112-130, False Reports to Police, Tampering with a Victim or Witness (18 U.S. CODE § 1512(b)(c)(d)) in a pattern of Racketeering, 11 April 2018.

5.    Karl Nastrom - para 116-119, Perjury, Tampering with a Victim or Witness (18 U.S. CODE § 1512(b)(c)(d)) in a pattern of Racketeering, 11 Jun 2018.

6.    Marilyn Moreno - para 120-124, Extortion (18 U.S. CODE § 1951) in a pattern of Racketeering, 29 May 2018

7.    Marilyn Moreno, Karl Nastrom 124-137, False Reports to Police, Tampering with a Victim or Witness (18 U.S. CODE § 1512(b)(c)(d)) in a pattern of Racketeering, 11 April 2018, 19 Jul 2018, 26 Jul 2018, 30 Aug 2018

8.    Marilyn Moreno, Karl Nastrom, Shelley O'Brien, para 139-145, False Reports to Police, Perjury, Tampering with a Victim or Witness (18 U.S. CODE § 1512(b)(c)(d) in a pattern of Racketeering, Retaliation against a witness (18 U.S. CODE § 1513(e) in a pattern of Racketeering, Aug 2018 - March 2019.

9.    Marilyn Moreno, Karl Nastrom, para 146-154, Extortion (18 U.S. CODE § 1951) in a pattern of Racketeering, Nov 2018, Jan 2020.

10.   Hector Moreno, Joseph Tang, Marilyn Moreno, Karl Nastrom, Shelley O'Brien, para 91-162, False Reports to Police, Perjury, Tampering with a Victim or Witness (18 U.S. CODE § 1512(b)(c), (d)), Retaliation against a

witness (18 U.S. CODE § 1513(e)) in a pattern of Racketeering, Aug 2018 –
March 2019.

11.  Natalie Gomez, Lauren Edwards – para (198 – 203, 206-211) Perjury,
False reports of Crimes, Tampering with a Victim or Witness (18 U.S. CODE §
1512(b)(c)(d)) in a pattern of Racketeering, April 2019 – June 2020, 28 Aug
2019.

12.  Natalie Gomez, Lauren Edwards – para (212 – 213, 222), Perjury,
Retaliation against a Victim or Witness (18 U.S. CODE § 1513(e)) in a
pattern of Racketeering, April 2019 – June 2020, 28 Aug 2019.

13.  Natalie Gomez, Lauren Edwards, para 204-205, 223 Extortion (18 U.S.
CODE § 1951) in a pattern of Racketeering, April 2019 – June 2020.

14.  Natalie Gomez, Lauren Edwards, para 212-215, Bank Fraud (18 U.S. Code §
1344) in a pattern of Racketeering, Nov 2019 – June 2020.

15.  Rick Trevino, para 244 – 248, committed criminal Perjury and a crime of
Tampering with a Victim or Witness (18 U.S. CODE § 1512(b)(c)(d)) in a
pattern of Racketeering, and Retaliation against a Victim or Witness (18
U.S. CODE § 1513(e)) in a pattern of Racketeering. Dec 2020 – Aug 2020.

16.  Rick Trevino, para 248-252, committed a violation of (18 U.S. CODE §
1512 (c)(1)) in a pattern of Racketeering, by moving plaintiff's belongings
from his house, into storage and forging plaintiff's signature on the

contract. Plaintiff could not pay the contract fees and lost much of his

belongings (and documents and evidence for these cases). Aug 2020.

17.  Rick Trevino, Intero Real Estate Services, Intero Corporate governance

(Christopher Moles, Brian Crane) and corporate counsel (Heather Wang), para

253-256, committed a crime of Money Laundering (18 U.S. CODE § 1956, 1957)

in a pattern of Racketeering, Aug 2020 - Oct 2020.

18.  Plaintiffs pray for relief.

## SECOND CAUSE OF ACTION

### PATTERN OF CRIMES BY RACKETEERING ENTERPRISE

18 U.S. CODE § 1962(c)

19.  From 2017 to present, the defendant persons managing/operating the

Enterprise and conspiring with the Enterprise conducted the affairs of the

Enterprise through a pattern of racketeering 18 U.S. CODE § 1962(c) to

commit Extortion and defraud plaintiffs of over $2M of property and assets

for the financial gain of those operating the Enterprise.

20.  Explicit evidence of the racketeering pattern in violation of (18 U.S.

CODE § 1962(c)) in Plaintiffs' case by The Law Firm of J Hector Moreno,

Hector Moreno, and employees, The Moreno Family Law Firm, Marilyn Moreno and

employees is evidenced in paras 65-90 and 91-162 and in the exhibits

referenced from those paragraphs, Sept 2017 - March 2019.

21.   Explicit evidence of the continuation of this racketeering pattern in violation of (18 U.S. CODE § 1962(c)) in Plaintiffs' case by The Gomez Edwards Law Group, Natalie Gomez, Lauren Edwards and their employees is evidenced in paras 198 - 223 and in the referenced exhibits, April 2019 – June 2020.

22.   Explicit evidence of the active criminal participation in this racketeering pattern in violation of (18 U.S. CODE § 1962(c)) in Plaintiffs' case by pro tem 'judge' Sharon Roper is evidenced in paras 224-239 and in the referenced exhibits, Apr 2019 – Aug 2020.

23.   Explicit evidence of the active criminal participation in this racketeering pattern in violation of (18 U.S. CODE § 1962(c)) in Plaintiffs' case by Rick Trevino and Intero Real Estate is evidenced in paras 240-256, Dec 2019 – Aug 2020.

24.   Statistical evidence for all 148 cases litigated by Hector and Marilyn Moreno from 2016-2018 is shown in Exhibit A-A, and records for specific cases with a similar pattern as plaintiff's (reported to FBI) are show in Exhibit F. Testimony of the racketeering pattern and these predicate crimes from the divorce file of Tom Sorri and Kathia Sorri (Oster/Portuguz) in Exhibit D, and Jennifer Ninan in Exhibit I, and a full description of their pattern and tactics is given in paras 65-90, all showing the same racketeering pattern by Hector and Marilyn Moreno of fraud (Perjury, False Police Reporting) being used to interfere and tamper with witnesses, to put them in fear and Extort Property from them, retaliating if the opponent would not give in.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 114

25.   This racketeering enterprise is a well-oiled machine whose operators
have experience operating together to commit these predicate crimes in a
pattern of racketeering. They all conspire and communicate, as any
information give to one individual always reached the others. When one
individual or group was pushed on, they acted to protect each other's mutual
criminal interests, and interfered and tampered with any witnesses that
tried to testify against them, then viciously retaliated against them
afterward, making false reports of crimes and bringing malicious
prosecution.

26.   Plaintiffs pray for relief.

### THIRD CAUSE OF ACTION

CONSPIRACY TO COMMIT RICO OFFENCES

18 U.S. CODE § 1962(d)

27.   From 2017 to present, defendant persons conspired with the
operators/managers of the Enterprise to conduct the affairs of the
Enterprise through a pattern of racketeering 18 U.S. CODE § 1962(c) to
defraud plaintiffs by Extortion of over $2M of property and assets for the
financial gain of those operating the Enterprise.

28.   Michael H. Moreno, Marilyn Moreno, Hector Moreno, para 168-187,
Conspiring 18 U.S. CODE § 1962(d) to violate 18 U.S. CODE § 1962(c) in a
pattern of Racketeering, Aug 2018 – March 2019.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 115

29.   Judge Julie Emede and other employees acting under color of law, para 188-197, Violation of 18 U.S. CODE § 1962(d), conspiring with Marilyn Moreno, and Shelley O'Brien, in crimes of Perjury, Tampering with a Victim or Witness (18 U.S. CODE § 1512(b)(c), (d)), Retaliation against a witness (18 U.S. CODE § 1513(e)), and, Extortion (18 U.S. CODE § 1951), 17 Sept 2018, 5 Dec 2018 in a pattern of Racketeering (18 U.S. CODE § 1962(c)).

30.   Real Estate Pro Tem 'Judge Roper' para 224-239, committed multiple violations of 18 U.S. CODE § 1962(d), conspiring with Natalie Gomez, Lauren Edwards, Rick Trevino, and Intero in their crimes of Perjury, False reports of Crimes, Tampering with a Victim or Witness (18 U.S. CODE § 1512(b)(c)(d)), Retaliation against a Victim or Witness (18 U.S. CODE § 1513(e)), and Extortion (18 U.S. CODE § 1951), April 2019 – June 2020.

31.   Rick Trevino, his senior management and senior counsel, and Intero Real Estate Services, para 240-256, committed criminal conspiracy in violation of (18 U.S. CODE § 1961(d)) to aid and abet the racketeering pattern of crimes (18 U.S. CODE § 1961(c)) by the other operators of the enterprise, including Tampering with a Victim or Witness (18 U.S. CODE § 1512(b)(c)(d)), Retaliation against a Victim or Witness (18 U.S. CODE § 1513(e)), and Extortion (18 U.S.C. § 1951), surrounding the sale. Dec 2019 to Oct 2020

32.   Plaintiffs pray for relief.

**FOURTH CAUSE OF ACTION**

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 116

VIOLATIONS OF CONSTITUTIONAL RIGHTS

Second Amendment

Fourth Amendment

Sixth Amendment

Fourteenth Amendment


33.   The defendants persons and agencies acting under the color of law for Municipal, County and State agencies named in this action, by their actions, omissions, and/or aiding and abetting of others' actions violated and continue to violate Plaintiffs' 2nd, 4th, 6th, and 14th Amendment Constitutional rights, including defendants: Judge Julie Emede, Judge Thomas Kuhnle, Temp Judge Sharon Roper, County Of Santa Clara, Santa Clara County Sheriff's Office, South County Criminal Court, DOE 1-5 Criminal Judges, Santa Clara County District Attorney, Michael Moreno(DA Prosecutor), Murat Ozgur (DA Prosecutor), DOE 11-20 DA Prosecutors, all acting under the color of law for their respective governing bodies.


34.   County of Santa Clara, District Attorney of Santa Clara, South County Court and employees acting under color of law, para 168-187, Violation of 4th Amendment, 6th Amendment, 14th Amendment, Aug 2016 to present.


35.   Family Justice Center, Judge Julie Emede and other employees acting under color of law, para 188-197, committed multiple violations of 6th Amendment, 14th Amendment Rights, 17 Sept 2018, 5 Dec 2018.


36.   Family Justice Center, Judge Thomas Kuhnle and other employees acting under color of law, para 216 – 219, committed multiple violations of 4th

Amendment, 6th Amendment, 8th Amendment 14th Amendment Rights, 30 Jan 2020, 23 Jun 2020.

37.   Real Estate Pro Tem 'Judge Roper' para 224-239, committed multiple violations of Plaintiff's 4th and 14th Amendment Rights. April 2019 – June 2020.

38.   By their actions, these defendants acting under the color of law either conspired with the operators/managers of the Enterprise, aiding and abetting them in their criminal acts towards Plaintiffs, or at best showed deliberate indifference in their violation of Plaintiff's Constitutional Rights, even when informed of the criminal acts by the other parties, and that their indifference and lack of intervention willfully allowed the Plaintiffs to come to harm.

39.   Plaintiffs pray for relief.

**FIFTH CAUSE OF ACTION**

DISCRIMINATION

42 U.S. Code § 12132

40.   Brent Oster is a qualified individual with a disability and was denied the benefits of the services, programs, or activities of the County of Santa Clara and City of Gilroy, including by the DA, Police, be being denied investigation of crimes that he reported and other services they should have provided to him as a victim of domestic violence and as a victim of State and Federal crimes. Instead he was subjected to discrimination, ridicule,

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 118

wrongful and malicious prosecution, excessive force, and was subjected to discrimination by all of these entities, simply because of his disability.

41.  Plaintiff prays for relief.

### DAMAGES

42.  Plaintiff Brent Oster and involuntary Plaintiff Kathia Oster/Portuguez claim the following damages:

a) $10,000 in property seized by Gilroy PD and Santa Clara PD in Sept 2017 that was 'disposed of' in violation of 2nd Amendment and 4th Amendment

b) Loss of property of $360,000 in savings and retirement

c) Loss of property of a $1.3M house in Gilroy CA

d) $40,000 Loss of all the personal belongings of Plaintiff, moved from that home into Storage (by defendants) that he could not afford, and forfeited at auction.

e) Lost past earnings for 3 years since 2017: $600,000 for Brent, $300,000 for Kathia

f) Future loss of another year earnings: $200,000 for Brent, $100,000 for Kathia.

g) Reduced earning capacity for 5 years: $500,000 for Brent, $250,000 for
   Kathia.

h) Loss of use of the Gilroy Home for 3 years because of the contention
   over it, with threats of lawyers and/or police removing people from it
   and/or arresting them: $5500 x 36 months (Sept 2017 – Aug 2018) =
   $198,000.

i) Loss of use of San Jose House - Kathia was afraid to use the San Jose
   rental home because she was deceitfully told by the Moreno attorneys if
   she lived there, Brent knew the location and would come there to kill
   her, when they knew these assertions not to be based in fact:  $3500 x
   36 months = $126,000.

j) Brent has to pay penalties on early withdrawal of $360,000 of
   retirement funds (above in loss of property) which he had to withdraw
   to pay for their tripled living expenses and massive legal expenses
   during this proceeding:  $126,325

k) Interest on all the preceding monetary damages from not having the
   monies since 2017 (6%): $546,000

l) Physical and emotional pain and suffering = $1,000,000 Brent,
   $1,000,000 Kathia

m) Exacerbation of existing Medical Conditions and Disabilities. Both
   Kathia Oster and Brent Oster suffer from ADA recognized disabilities

under Federal Code 12132 that were greatly exacerbated and became debilitating because of the wrongful actions of the Moreno Attorneys and failure to intervene by the Defendants – exacerbations that Plaintiffs' will suffer from for decades: $500,000 Brent, $500,000 Kathia

n) There are also intangible damages that are difficult to estimate long term from losing all their financial security, their credit ratings, and their support systems so late in life, now having to rebuild their lives from nothing in their 50s.

43.   This was a Racketeering Enterprise, committing a pattern of predicate cries that resulted in these damages, taking from Plaintiff his retirement, his home, his vehicle, his ability to earn an income, and charging him with false crimes, turning him into an impoverished refugee, fleeing from this persecution.

44.   When he met Kathia in 2008, Brent paid off all the Moreno Attorneys bill ($47,000) from her first divorce, which they were just finishing for Kathia, in which they had also convinced her that her first husband (Tom) was coming after her to kill her – so they got a DVRO to 'protect her' and to Extort a house from him. She was psychologically and emotionally devastated and had paranoid ideations about her ex-husband for years. Brent



COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 121

spent the next 8 years loving her, helping her live again, and trust again, taking her to Yosemite to camp, Tahoe to teach her to snowboard, to Paris, and many other places to be a tourist and to practice her love of photography. She learned to smile and laugh again and started worrying less and less about her first ex-husband and his nefarious plans she imagined. She was almost a whole person again.

45.    The Moreno attorneys do not just steal money and assets with their racketeering activities, they steal lives. Some people like Kathia are more psychologically susceptible (because of her disability), and the lies and deceits the Morenos told her and got her to participate in (twice) - damaged her for life this time. Kathia will never have a normal life, nor relationship again and will always be in fear of her two ex-husbands coming to harm her from now on, despite there being zero danger. She will not be able to ever work again and will be dependent on the award of damages from this lawsuit to live on for the rest of her life, as she is probably without funds to live on as of the time of this filing.

46.    With their actions against Brent Oster, the Defendants parties acting under the color of law did NOT bring help, support, not protection for Kathia, they brought more harm than they could imagine. They had many reasonable opportunities to intervene and stop the malicious prosecution and prevent this tragedy, but simply refused to do so, and by their wrongful actions and non-intervention, willfully failed to keep her from harm and destroyed her life, and they are liable.

47.    Plaintiffs pray to this court to hold the Defendants joint and separable liable for the actual damages caused by their actions and

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 122

omissions towards plaintiff Brent Oster and involuntary plaintiff Kathia Oster (Portuguez) for the sum of $10,000,000 USD, the amount by which they were directly injured in their property by the conduct of the defendant parties (constituting the violations listed in this complaint and in the causes of action), as the plaintiff's injury directly flows from the commission of the predicate acts, especially of Extortion.

48.   Under 18 U.S. Code § 1964(c) Plaintiffs were injured in their persons and property by reason of violations of RICO, section 18 U.S. CODE § 1962(c) & 18 U.S. CODE § 1962 (d) of this chapter and may sue therefor in any appropriate United States district court and shall recover threefold the damages they sustained and the cost of the suit, including a reasonable attorney's fee.

49.   Therefore, plaintiff prays to the US District Court for total monetary relief, of $30,000,000, to be paid as $15,000,000 to Brent Oster and $15,000,000 to Kathia Oster(Portuguez) for the damages from the defendants actions and omissions, who by their combined wrongdoing, destroyed both the lives of Kathia and Brent Oster and left them both broke, homeless, and without hope of a future at age 50. Plaintiff prays to the court to give them both a chance to have a future again by this relief of monetary damages.

50.   Plaintiffs ask they both be granted declarative relief affirming their constitutional rights, and that any State orders (and/or State charges based on them) in violation of those rights or resulting from the crimes of the defendants against either of them be ordered vacated.

off

51.   Plaintiff asks the US District Court for a Mandatory Injunction that compels the State Bar of California to investigate Marilyn Moreno and Hector Moreno for violations of the Attorney Code of Conduct in Plaintiffs' case, focusing on the violations highlighted in this complaint.

52.   Plaintiff asks the US District Court for a Mandatory Injunction that compels the Santa Clara DA Office to investigate Marilyn Moreno, Hector Moreno, and Michael Moreno for the State crimes they committed against plaintiffs.

53.   Plaintiff also asks the US District Court to authorize the FBI / DOJ and Attorney General Office to investigate the Federal crimes by the defendant persons he has highlighted in this complaint, specifically the RICO crimes.

54.   Because the specific facts in this complaint clearly show that the Moreno Attorneys have a past pattern of vicious intimidation, retaliation and disregard for laws and due process, both Plaintiffs face immediate and irreparable injury, loss, or damage that will result as a result of future retaliation before the adverse party can be heard in opposition.

55.   Plaintiff (Brent Oster) asks the US District Court for a Restraining Order (under 18 U.S. Code § 1514) preventing any of the Moreno Attorneys from acting against either him or Kathia Oster, either directly or through any other parties in any way, and that the Moreno Attorneys be restrained from contact with both Plaintiffs physically and restrained from any means of communication with them.

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT42 U.S. CODE § 1983 - 124

56.   Previously, California State Courts, the Santa Clara County DA, and the Municipal Police never took any actions to protect Plaintiffs against the actions and crimes of the defendants, and it is questionable if those agencies will properly enforce such a TRO from the US District court. As such, Plaintiff (Brent Oster) asks the US District Court to grant him temporary and limited scope privileges to assume any violations of the TRO are to either place Plaintiffs (1) in imminent danger of death or serious injury, or (4) to cause serious offenses and damage to property against plaintiffs, and to allow Plaintiff (Brent Oster) to act according to 32 USC 632.4(a)(1)&(4) against the Moreno Attorneys and/or any persons acting on their behalf that so violate this order.

57.   Plaintiff Brent Oster asks the US District Court to order USCIS to immediately approve the Green Card for his wife, Ada Caceres, as the wrongdoing by the Defendant parties caused Plaintiff to have to cancel her K1 visa in 2019 due to the charges against him not being tried in a timely manner, and to postpone getting her Green Card in 2020 when he was evicted from his house, had it taken from him and sold, and had no assets or income to prove he could support her.

58.   The court and Jury have a very important decision to make – will they California tolerate criminal racketeering behavior by such persons: Attorneys licensed by the state blatantly violating the terms of their Bar license and committing State crimes of fraud, perjury, false reports of crimes and federal crimes of interfering and tampering with witnesses who try to oppose their fraud. Tolerating such criminals conspiring with family court judiciary and Fortune 500 realtors to commit crimes of extortion, real-estate fraud and of money laundering, stealing people's lives

59.    Or should these criminals be treated for what they are and these persons prosecuted and held civilly liable under RICO as they are supposed to be by law.

Brent Oster

*Brent Oster*

7/10/2021

COMPLAINT 18 U.S. CODE § 1961 (RICO) ACTRACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT42 U.S. CODE § 1983 - 126